**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NOEMIA CARVALHO, on behalf of
herself and other similarly situated
people,

         *Plaintiff-Appellant,*

      v.

EQUIFAX INFORMATION SERVICES,
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANSUNION LLC,
         *Defendants-Appellees.*

No. 09-15030

D.C. No.
5:08-cv-01317-JF

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
February 11, 2010—San Francisco, California

Filed August 18, 2010
Amended December 16, 2010

Before: Diarmuid F. O'Scannlain, Stephen S. Trott and
Richard A. Paez, Circuit Judges.

Opinion by Judge O'Scannlain

20189

## COUNSEL

Scott D. Kalkin, Roboostoff & Kalkin, San Francisco, California, argued the cause for the plaintiff-appellant. Ron Bochner, Law Offices of Ron Bochner, Santa Clara, California, filed the briefs.

Stephen J. Newman, Stroock & Stroock & Lavan LLP, Los Angeles, California; Barry Goheen, King & Spalding LLP, Atlanta, Georgia; and Meir Feder, Jones Day, New York, New York, argued the cause for the defendants-appellees and filed a brief. With them on the brief were Lewis P. Perling, King & Spalding LLP, Atlanta, Georgia; Brian C. Frontino and Darius K. Zolnor, Stroock & Stroock & Lavan LLP, Los Angeles, California; and Deanna L. Johnston and Nathaniel P. Garrett, Jones Day, San Francisco, California.

---

## ORDER

The opinion filed on August 18, 2010, is amended as follows:

At pages 12121-22 of the slip opinion, replace:

<Until the consumer has successfully resolved the legal dispute in her favor—for example, by means of a judgment, arbitration award, or settlement—we cannot say that a CRA reporting factually correct information about the disputed debt is misleading potential creditors. Indeed, it would be misleading to potential creditors to delete such information because "the>

with

<A CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits. Indeed, determining whether the consumer has a valid defense "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA." *DeAndrade*, 523 F.3d at 68. Nor is a CRA obligated not to report any information about the disputed item

simply because the consumer asserts a legal defense. "[T]he>

At page 12123 of the slip opinion, lines 16-17, replace <show any inaccuracy as a matter of law> with <make a prima facie case of inaccurate reporting>.

With these amendments, the panel has unanimously voted to deny the petition for rehearing. Judges O'Scannlain and Paez have voted to deny the petition for rehearing en banc, and Judge Trott has so recommended. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for hearing en banc are DENIED. No further petitions for hearing or rehearing en banc may be filed.

The motion by the National Consumer Law Center and National Association of Consumer Advocates to file a brief of amici curiae in support of Carvalho's petition for rehearing and for rehearing en banc is DENIED as moot.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a credit reporting agency is liable for a disputed credit report under California's Consumer Credit Reporting Agencies Act.

### I

### A

In October 2001, Noemia Carvalho received medical treatment from Bayside Medical Group, Inc. ("Bayside"), in

Pleasanton, California. Prior to receiving her treatment, Carvalho signed the following agreement ("Agreement"):

> Bayside Medical Group, Inc., will bill your insurance as a courtesy to you. If your insurance does not pay the claim within 90 days of the date of service, the balance of your account will be your responsibility. . . . I hereby authorize my insurance company to pay benefits directly to Bayside Medical Group, Inc., and I am financially responsible for non-covered services.

As a result of her treatment, Carvalho incurred charges amounting to $118.

For reasons that remain unclear,[1] Bayside received no payment from her insurance company within the ninety days provided in the Agreement. Bayside sent Carvalho a bill for $118 in January 2002, as well as a "final notice" in March 2003. Neither Carvalho nor any insurer paid the bill.

Thereafter, Bayside assigned the debt to Credit Consulting Services ("CCS"), a collection agency. CCS sent Carvalho a series of dunning letters threatening to report the debt to three major credit reporting agencies—Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and TransUnion LLC ("TransUnion") (collectively, "CRAs")—if she did not pay the bill. Despite these warnings, Carvalho still did not pay the bill or arrange for payment by her insurer. Accordingly, CCS reported the debt to the CRAs.

After Carvalho noticed the debt on her credit report,[2] her

---

[1]As the district court noted, the parties dispute whether Carvalho was insured by Blue Cross or Blue Shield (if at all), and whether Bayside billed the correct insurer. *See Carvalho v. Equifax Info. Servs. LLC*, 588 F. Supp. 2d 1089, 1091 (N.D. Cal. 2008).

[2]The debt appeared on her consolidated credit report under the heading "Collection Accounts," with a listing of the creditor (CCS), opening date

attorney sent CCS a letter in September 2004 explaining that the debt arose from a bill her insurance company "wrongfully refused to pay" and requesting that CCS "immediately investigate and correct the information that is erroneously appearing on her credit report." CCS responded that Bayside "bills insurance as a courtesy only and the individual is responsible for non covered services," and that Carvalho's "insurance was billed and coverage denied." CCS concluded that it "reported this account correctly" and that any problem "should be resolved between Ms. Carvalho and her insurance company."

That same month, Carvalho also sent letters to the three CRAs requesting that they investigate—or, in industry parlance, "reinvestigate"—the CCS debt on her credit report. The letters stated: "I dispute the above item on my enclosed Credit Report. These bills arose out of the medical treatment I was covered for by Blue Cross of California. For some reason that is unknown to me, they did not pay these medical bills." The letters requested that the above-quoted passage be added to Carvalho's credit report.

Pursuant to their standard procedures, the CRAs each sent an electronic Consumer Dispute Verification ("CDV") form to CCS with a cursory description of the dispute and a request that CCS verify the account information. CCS responded by reporting that the information was "accurate," and the CRAs each updated Carvalho's credit report to indicate that the information about the CCS debt had been verified but was disputed by Carvalho. In addition, Equifax added Carvalho's statement to her report. The CRAs each sent Carvalho notices explaining that they had verified the information as correct and describing further steps she could take if unsatisfied with the outcome of the reinvestigation.

(08/03), reported date (09/03), past due amount ($118), and present status ("collection").

In April 2005, Carvalho sent the CRAs new letters requesting "a description of how [the CCS] item was verified." In addition, she requested that the CRAs include a statement on her credit report similar to the one she had sent in her prior letter. Equifax mailed Carvalho a boilerplate description of its procedures for verifying disputed items. Experian and Trans-Union construed Carvalho's letter as a request for another reinvestigation, which also resulted in CCS's verification of the item. Although Experian and TransUnion added Carvalho's statement to her credit report, neither complied with her request for a description of how they had verified the debt.

In June 2005, Carvalho submitted another round of letters to the CRAs renewing her dispute over the CCS item. According to the letters, she "learned that the [Bayside] bill may have been paid if [Bayside] had timely and properly submitted my bill to Blue Shield."[3] Both Equifax and Experian launched new reinvestigations, with the same outcome as before. TransUnion informed Carvalho that it considered her dispute "frivolous" and would not conduct any further reinvestigation absent "court papers or a recent, authentic letter from the creditor(s) that explains what information should be updated."

In February 2006, Carvalho's attorney sent letters to the CRAs explaining that there was "clear evidence" that the CCS item was "wrong" because "Bayside failed to timely and properly request payment from Blue Cross of California, instead improperly seeking payment from Blue Shield." According to the letters, "Carvalho's credit score has suffered due to this entry and caused her home to be refinanced at a rate higher than necessary due to its inclusion." The letters demanded that the entry be removed from Carvalho's credit report and that she be paid $25,000 plus attorney's fees. Moreover, the letters demanded yet another reinvestigation.

---

[3]Carvalho contends on appeal that Blue *Cross* was her insurer. There is no explanation in the record why her letter referenced Blue *Shield*.

The CRAs once again contacted CCS, which verified the information as accurate, and updated Carvalho's credit report accordingly.

B

On July 24, 2006, Carvalho filed a class action complaint against CCS and the three CRAs in the Monterey County Superior Court. The complaint alleged various violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 *et seq.*, including the CRAs' failure to conduct a proper reinvestigation of Carvalho's dispute; the CRAs' failure to provide a sufficient response to her request for a description of the procedures they used to verify the CCS item; CCS's failure to cooperate in the reinvestigation; and CCS's reporting of a debt it knew or should have known to be illegitimate. The complaint sought to certify two classes:

1.   California consumers seeking injunctive relief against consumer credit reporting agencies' reinvestigation procedures which, as presently constituted, fail to comply with the [CCRAA] in that they fail [to] meet the requirements of that statute, including, but not limited to, the fact that they fail to allow for review and consideration of all relevant information provided by the Consumer in the reinvestigation process; [and]

2.   California consumers seeking injunctive relief against the consumer credit reporting agencies, who pursuant to the [CCRAA] requested, but did not receive, an adequate description of the procedure used to determine the accuracy and completeness of the disputed information.

The prayer for relief sought class certification, an injunction, damages (including punitive damages), attorney's fees, and

costs. However, the complaint did not plead a specific amount of damages.

The superior court granted CCS's demurrer to the complaint without leave to amend on grounds that the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681t(b)(1)(F), preempted Carvalho's CCRAA claims against CCS.

On March 7, 2008, Equifax filed a notice of removal in the District Court for the Northern District of California alleging that the case met the $5 million amount-in-controversy requirement under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Equifax maintained that its notice of removal was timely because it did not become aware that the case met the requirement until Carvalho revealed in her depositions on February 6 and March 4, 2008, that the amount in controversy was at least $12.5 million (*i.e.*, $25,000 times 500 potential plaintiffs). Carvalho moved to remand, arguing that CAFA's amount-in-controversy requirement was not met and that the notice of removal was untimely. The district court denied the motion.

Carvalho moved for class certification as well as for leave to amend her complaint to add causes of action for negligent violation of the CCRAA's reinvestigation provision and willful violation of the FCRA's reinvestigation provision. The three CRAs each filed a motion for summary judgment. The district court granted the motions for summary judgment, denied as moot Carvalho's motion for class certification, and denied as futile her motion to amend her complaint. *See Carvalho v. Equifax Info. Servs., LLC*, 588 F. Supp. 2d 1089 (N.D. Cal. 2008). This appeal timely followed.

## II

Carvalho first urges that this case was untimely removed

from state court and claims that the district court erroneously denied her motion to remand.[4]

A

**[1]** CAFA at 28 U.S.C. § 1332(d), "vests district courts with original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (internal quotation marks omitted). Such actions may be removed from state court pursuant to 28 U.S.C. § 1453(b). The timeliness of removals pursuant to CAFA is governed by 28 U.S.C. § 1446(b), which provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may

---

[4]Carvalho's reply brief also contends that the CRAs "waived their right to move by delay." Because she did not raise this argument in her opening brief, she has waived it. *See United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999).

first be ascertained that the case is one which is or has become removable . . . .

**[2]** To summarize, section 1446(b) identifies two thirty-day periods for removing a case. The first thirty-day removal period is triggered "if the case stated by the initial pleading is removable on its face." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives "a copy of an amended pleading, motion, order or other paper" from which removability may first be ascertained. 28 U.S.C. § 1446(b).

If the notice of removal was untimely, a plaintiff may move to remand the case back to state court. *See id.* §§ 1447(c), 1453(c)(1); *Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1191-92 (9th Cir. 2003).

B

Carvalho argues that by the time Equifax received her complaint in October 2006, it should have been aware that the case was removable based on the $25,000 settlement demand she made in February 2006, as well as a civil case cover sheet[5] served with the complaint indicating "unlimited jurisdiction"—*i.e.*, an amount demanded exceeding $25,000. *See* Cal. Civ. Proc. §§ 85, 88. According to Carvalho, Equifax should have been able do the math to determine that the aggregate amount in controversy exceeded $5 million ($25,000 per plaintiff x 500 potential plaintiffs = $12.5 million). Consequently, Carvalho contends that the March 2008 removal was untimely under section 1446(b).

---

[5]Under the California Rules of Court, "[t]he first paper filed in an action or proceeding shall be accompanied by a case cover sheet," and such cover sheet must be served with a copy of the complaint where, as here, the action is designated "complex." Cal. R. Ct. 3.220(a).

**[3]** Because the face of the initial pleading—Carvalho's superior court complaint—lacked any indication of the amount in controversy, it did not trigger this first thirty-day removal period. Hence, we consider only whether the demand letter or civil cover sheet triggered the second thirty-day removal period.

1

**[4]** Carvalho argues that the settlement demand she made in February 2006 put Equifax on notice of the amount in controversy. We have held that a demand letter sent during the course of the state court action can constitute "other paper" within the meaning of section 1446(b) if it reflects a reasonable estimate of the plaintiff's claim. *See Babasa v. Lens-Crafters, Inc.*, 498 F.3d 972, 975 (9th Cir. 2007). Here, however, the demand letter was sent to Equifax several months before Carvalho even filed her complaint.

**[5]** It is axiomatic that a case cannot be removed before its inception. If the second paragraph of section 1446(b) were meant to include as "other paper" a document received by the defendant months before receipt of the initial pleading, the requirement that the notice of removal "be filed within thirty days after receipt by the defendant" of the "other paper" would be nonsensical. Moreover, that the second paragraph lists "an amended pleading, motion, order"—all documents which logically cannot predate the initial pleading—before "or other paper" leads us to conclude that "other paper" does not include any document received prior to receipt of the initial pleading. *See United States v. Williams*, 553 U.S. 285, 294 (2008) (noting that "the commonsense canon of *noscitur a sociis* . . . counsels that a word is given more precise content by the neighboring words with which it is associated"). Accordingly, we conclude that any document received prior to receipt of the initial pleading cannot trigger the second thirty-day removal period.

We also reject Carvalho's suggestion that a pre-complaint document containing a jurisdictional clue can operate in tandem with an indeterminate initial pleading to trigger some kind of hybrid of the first and second removal periods. In *Harris*, we held that the first thirty-day removal period comes into play only if removability is ascertainable from "examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." 425 F.3d at 694. We adopted this "bright-line approach" to "avoid[ ] the spectre of inevitable collateral litigation over . . . whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Id.* at 697. We would eviscerate our holding in *Harris* if we required defendants to rely on pre-complaint documents to ascertain whether a case stated by an indeterminate initial pleading is actually removable.

**[6]** Consequently, the February 2006 demand letter did not trigger a thirty-day removal period under section 1446(b).

2

**[7]** Carvalho also argues that Equifax could have ascertained the aggregate amount in controversy from the civil cover sheet's invocation of "unlimited" jurisdiction. Assuming without deciding that a civil cover sheet can constitute "other paper" within the meaning of section 1446(b), we are unpersuaded that this particular cover sheet affirmatively revealed that the aggregate amount in controversy exceeds $5 million. The checked "Unlimited" box on the cover sheet merely indicates that the "[a]mount demanded exceeds $25,000." Nothing in the cover sheet indicates that the amount demanded *by each putative class member* exceeds $25,000. *Cf. Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006).

**[8]** Had Equifax removed the case based on this indeterminate cover sheet alone, "it may well have subjected itself to

fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). Because we neither require nor encourage defendants to remove prematurely based on such indeterminate papers, *see Harris*, 425 F.3d at 697-98, we conclude that the civil cover sheet did not trigger the second thirty-day removal period.

C

The CRAs note that removal was timely because it was Carvalho's deposition testimony which provided the first indication in this case that the amount in controversy exceeds $5 million, and Equifax removed within thirty days of the deposition. In her opening brief, Carvalho did not contest that the deposition revealed that her case satisfies CAFA's amount-in-controversy requirement. Therefore, she has waived any argument to the contrary. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986).

**[9]** In any event, we agree with the district court that Carvalho's deposition testimony triggered the second thirty-day removal period. Like a response to interrogatories, *see Durham*, 445 F.3d at 1251, a plaintiff's response to deposition questions can constitute "other paper" within the meaning of section 1446(b), *see, e.g., Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 466 (6th Cir. 2002) (collecting cases). In her deposition, when asked whether "$25,000 apiece" would be insufficient "to resolve the damages on behalf of the persons that are similarly situated," Carvalho answered, "That's correct." From this testimony, Equifax could reasonably determine for the first time that the amount in controversy was at least $25,000 per class member, or $12.5 million total.

**[10]** Because the notice of removal was filed within thirty days of Carvalho's deposition testimony, which was "other paper from which it may first be ascertained that the case is

. . . removable," 28 U.S.C. § 1446(b), we conclude that the denial of Carvalho's motion to remand was proper.[6]

### III

Carvalho next contends that the state superior court erred in granting CCS's general demurrer without leave to amend.

### A

Although CCS was served with the notice of appeal as well as Carvalho's briefs in this appeal, CCS did not file an answering brief or join the CRAs' answering brief.[7] Nevertheless, the CRAs argue on CCS's behalf that we lack jurisdiction over this part of the appeal because "Carvalho's opportunity to appeal the Superior Court's dismissal has long since expired" under the California Rules of Court.

[11] "After removal, the federal court takes the case up where the State court left it off." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974) (internal quotation marks omitted). "The federal court . . . treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963). Consequently, an order entered by a state court "should be treated as though it had been validly rendered in the federal proceeding." *Id.* at 786. "[F]ederal rather than state law governs the future course of proceedings." *Granny Goose Foods*, 415 U.S. at 437.

---

[6]Because we conclude that Equifax timely removed the case, we need not consider its argument that Carvalho waived any procedural defects by failing to make a timely objection.

[7]CCS's failure to file a brief does not compel a ruling in Carvalho's favor, given that the only sanction for failure to file an answering brief is forfeiture of oral argument. *See* Fed. R. App. P. 31(c); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1478 (9th Cir. 1992).

**[12]** We treat the superior court's order sustaining the demurrer as a validly rendered dismissal pursuant to Federal Rule of Civil Procedure 12(b). *See Gardner v. UICI*, 508 F.3d 559, 563 n.5 (9th Cir. 2007) ("Under California practice, a general demurrer to a complaint is the equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b) in federal practice."). Under federal law, such a dismissal as to only one of several defendants is appealable when, as here, it has merged into the final judgment. *See* Fed. R. Civ. P. 54(b); *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 897-98 (9th Cir. 2001). Therefore, we reject the contention that we lack jurisdiction over this part of the appeal. *See Reilly v. Waukesha Cnty.*, 993 F.2d 1284, 1287 (7th Cir. 1993) ("Now that the case is before us, we may examine all of the antecedent interlocutory rulings, including those rendered by the state judge and absorbed into the district court's final judgment.").

B

On the merits, Carvalho contends that the superior court erred in concluding that the FCRA "preempts all state law causes of action against furnisher[s] of information such as CCS."

1

The FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Nevertheless, it expressly saves from preemption "section 1785.25(a) of the California Civil Code." *Id.* § 1681t(b)(1)(F)(ii). Section 1785.25(a), in turn, provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

Because the private right of action to enforce section 1785.25(a) is found in sections 1785.25(g) and 1785.31, which are not expressly saved from preemption under the FCRA, some courts have held that FCRA preempts private consumer actions against furnishers under California law. *See, e.g.*, *Lin v. Universal Card Servs. Corp.*, 238 F. Supp. 2d 1147, 1152-53 (N.D. Cal. 2002)). However, we recently rejected this view in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009). There, we concluded that the provisions creating a private right of action do not constitute a "requirement or prohibition" within the meaning of 15 U.S.C. § 1681t(b)(1)(F) because they merely provide a vehicle for enforcing actual requirements or prohibitions. *Id.* at 1170-71. Moreover, we concluded that it was highly unlikely that Congress "explicitly retained the portions of the California statutory scheme that create obligations, without leaving in place any enforcement mechanism." *Id.* at 1170. Therefore, we held that "the private right of action to enforce California Civil Code section 1785.25(a) is not preempted by the FCRA." *Id.* at 1173.

2

Relying primarily on *Gorman*, Carvalho argues that her CCRAA claims against CCS should be reinstated. Her complaint made two allegations against CCS: first, that CCS failed to cooperate with and complete an investigation in response to a reinvestigation inquiry from a consumer credit reporting agency, and second, that CCS willfully violated the CCRAA by reporting a debt it knew to be illegitimate.

In her opposition to CCS's demurrer, Carvalho defended only her claim that CCS had failed to assist in the reinvestigation. Nowhere did she mention her claim that CCS had knowingly reported inaccurate information, which is a violation of section 1785.25(a). "A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . , has effectively abandoned his

claim, and cannot raise it on appeal." *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). Because Carvalho failed to raise her section 1785.25(a) inaccuracy claim in response to the demurrer, we conclude that she has abandoned it.

**[13]** We are left with Carvalho's claim of inadequate investigation. California Civil Code § 1785.25(f) requires furnishers who receive notice of a dispute to complete an investigation and to review relevant information.[8] Section 1785.25(f), however, is not expressly saved from preemption by the FCRA. *Gorman* holds only that the FCRA does not preempt section 1785.25(a) claims against furnishers. *See* 584 F.3d at 1173. Because section 1785.25(a) is the only substantive CCRAA furnisher provision specifically saved by the FCRA, Carvalho's section 1785.25(f) claim is preempted. Therefore, we discern no reason to disturb the order sustaining the demurrer without leave to amend.

IV

Carvalho next claims that the CRAs violated the CCRAA's reinvestigation provision, Cal. Civ. Code § 1785.16, which provides in relevant part:

> If the completeness or accuracy of any item of information contained in his or her file is disputed by a consumer, and the dispute is conveyed directly to the consumer credit reporting agency by the consumer or user on behalf of the consumer, the consumer credit reporting agency shall within a reasonable period of time and without charge, reinvestigate and record the current status of the disputed information before the end of the 30-business-day period beginning on the date the agency receives notice of the

---

[8]Carvalho's complaint erroneously cites section 1785.25(d), which requires furnishers to report the closure of open-end credit accounts.

> dispute from the consumer or user, unless the con-
> sumer credit reporting agency has reasonable
> grounds to believe and determines that the dispute by
> the consumer is frivolous or irrelevant, including by
> reason of a failure of the consumer to provide suffi-
> cient information, as requested by the consumer
> credit reporting agency, to investigate the dispute.

*Id.* § 1785.16(a). After completing a reinvestigation, the CRA must provide the consumer with written notice of any results, including "a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided." *Id.* § 1785.16(d). The CRA must send such description "not later than 15 days after receiving a request from the consumer." *Id.*

### A

The district court held that "[b]ecause there is no genuine dispute that Plaintiff's credit report was factually accurate, Defendants are entitled to judgment as a matter of law." *Carvalho*, 588 F. Supp. 2d at 1100. Carvalho contends that inaccuracy is not a required element of a reinvestigation claim under the CCRAA. She also argues that the item on her credit reports referencing the CCS collection account was inaccurate.

"Our duty as a federal court in this case is to ascertain and apply the existing California law." *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008) (per curiam) (internal quotation marks omitted). We are bound by pronouncements of the California Supreme Court on applicable state law, but in the absence of such pronouncements, we follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise. *Id.*

**[14]** The California courts have yet to consider whether a plaintiff must demonstrate that a disputed item is inaccurate to obtain relief for a violation of the CCRAA's reinvestigation provisions. However, because the CCRAA "is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." *Olson v. Six Rivers Nat'l Bank*, 3 Cal. Rptr. 3d 301, 309 (Ct. App. 2003) (internal citations omitted).[9]

**[15]** Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (collecting cases). In *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008), we held that a plaintiff filing suit under section 1681i must make a "prima facie showing of inaccurate reporting." *Id.* at 1069. The inaccuracy requirement comports with the purpose of the FCRA, which is "to protect consumers from the transmission of inaccurate information about them." *Gorman*, 584 F.3d at 1157 (internal quotation marks omitted).

---

[9]The FCRA provides in relevant part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A). In addition, the FCRA contains provisions similar to those of the CCRAA with respect to consideration of all relevant materials submitted by the consumer, *id.* § 1681i(a)(4), and provision of a description of the procedure used to determine the accuracy and completeness of the disputed information, *id.* § 1681i(a)(6)-(7).

Because we believe California courts would find *Dennis* persuasive, we conclude that unless Carvalho has raised a genuine issue as to whether the disputed item was inaccurate, her CCRAA section 1785.16 claims fail as a matter of law.

In *Dennis*, we did not define what constitutes an inaccurate report. Later, in *Gorman*, we explained that an item on a credit report can be "incomplete or inaccurate" within the meaning of the FCRA's furnisher investigation provision, 15 U.S.C. § 1681s-2(b)(1)(D),[10] "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." 584 F.3d at 1163 (internal quotation marks omitted). The California Court of Appeal has expounded a very similar concept of inaccuracy in the context of FCRA and CCRAA provisions requiring that credit reporting agencies adopt procedures to assure the "maximum possible accuracy" of credit reports. *See* 15 U.S.C. § 1681e(b); Cal. Civ. Code § 1785.14(b). For example, in *Cisneros v. U.D. Registry, Inc.*, 46 Cal. Rptr. 2d 233 (Ct. App. 1995), the court concluded that "a report violates the[se] statutes when it is misleading or incomplete, even if it is technically accurate." *Id.* at 254.

**[16]** "We generally adhere to the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation." *United States v. Nordbrock*, 38 F.3d 440, 444 (9th Cir. 1994); *see also Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (deeming the term "inaccurate" in section 1681i(a) to be "essentially the same" as the term "incomplete or inaccurate" in section 1681s-2(b)). Moreover, we operate under the assumption that California courts would interpret the FCRA and CCRAA consistently. *See Olson*, 3 Cal. Rptr. 3d

---

[10]This provision requires a furnisher who receives notice of a dispute to report the results of its investigation to consumer reporting agencies "if the investigation finds that the information is *incomplete or inaccurate*." 15 U.S.C. § 1681s-2(b)(1)(D) (emphasis added).

at 309. Accordingly, in considering whether Carvalho's credit report was inaccurate within the meaning of the CCRAA, we are guided by *Gorman*'s "patently incorrect or materially misleading" standard.

B

**[17]** Carvalho's credit reports reflected a CCS collection account with $118 past due. Carvalho does not contend that the CCS collection account does not pertain to her, that the amount past due is too high or low, or that any of the listed dates are wrong. Indeed, she concedes that "[a]ll the data that shows in my credit report is correct" on its face. Because all of the relevant facts were correctly reported, there was no *patent* error in Carvalho's credit report.

**[18]** Carvalho's claimed inaccuracy, however, is *latent*. She contends that even if technically accurate, the CCS item was misleading because she was not legally obligated to pay the Bayside bill until Bayside had properly billed her insurer, as allegedly required by the Agreement,[11] and potential creditors would mistakenly assume from the derogatory item that she is uncreditworthy.

Black's Law Dictionary defines "creditworthy" as "financially sound enough that a lender will extend credit *in the belief default is unlikely*." *Black's Law Dictionary* 426 (9th ed. 2009) (emphasis added)). Under this definition, a consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not, regardless of how legally sound her reasons for

---

[11]Carvalho's reading of the Agreement is dubious at best, given that conditions precedent "are not favored by the law, and are to be strictly construed against one seeking to avail himself of them," *Antonelle v. Kennedy & Shaw Lumber Co.*, 73 P. 966, 968 (Cal. 1903), and, in any event, the Agreement merely states that her insurer would be billed "as a courtesy."

default are. That she defaulted is certainly relevant to potential creditors and is precisely the type of information that a credit report is meant to supply. *See* Cal. Civ. Code § 1785.3(c) (defining "consumer credit report" as "any . . . communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity").

Nevertheless, Carvalho contends that credit reporting agencies unfairly malign the creditworthiness of innocent consumers by reporting disputed debts without undertaking a searching inquiry into the consumer's legal defenses to payment. In other words, she believes consumers should be deemed innocent until proven guilty by a proper reinvestigation under the FCRA and CCRAA. The fundamental flaw in Carvalho's conception of the reinvestigation duty is that credit reporting agencies are not tribunals. They simply collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims. *See Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008).

For example, in *DeAndrade*, the dispute centered on whether the consumer had ratified an allegedly fraudulent mortgage. 523 F.3d at 68. The First Circuit concluded that "[w]hether the mortgage is valid turns on questions that can only be resolved by a court of law" and is "a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA." *Id.* The proper recourse for the consumer, therefore, was to resolve the issue in a suit against the creditor; "[i]f a court had ruled the mortgage invalid and Trans Union had continued to report it as a valid debt, *then* [the consumer] would have grounds for a potential FCRA claim." *Id.*

**[19]** We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of

consumer debts. "With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to '*re*investigate' a matter once already investigated in the first place." *Gorman*, 584 F.3d at 1156-57 (quoting 15 U.S.C. § 1681i(a)(1)). Hence, a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher, which "stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation." *Id.* at 1156. A CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits. Indeed, determining whether the consumer has a valid defense "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA." *DeAndrade*, 523 F.3d at 68. Nor is a CRA obligated not to report any information about the disputed item simply because the consumer asserts a legal defense. "[T]he very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991).

Both the FCRA and CCRAA allow consumers who are dissatisfied by a reinvestigation to file a brief explanatory statement to be reported along with the disputed item. *See* 15 U.S.C. § 1681i(b)-(c); Cal. Civ. Code § 1785.16(f)-(g). "In this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account." *Cahlin*, 936 F.2d at 1160 n.23. Carvalho complains that such an explanatory statement cannot obliterate the stain of a derogatory item on her credit report. While this may be true, it merely reinforces our view that a consumer who disputes the legal validity of an obligation should do so directly at the furnisher level. If successful, the consumer can clear her credit report without the need for any

explanatory statements. That Carvalho failed to do so is no fault of the CRAs.

**[20]** Because Carvalho has failed to establish an element of a prima facie reinvestigation claim—inaccuracy—we conclude that the district court properly granted summary judgment to the CRAs.[12]

V

Finally, Carvalho appeals the district court's denial of her motion for leave to amend her complaint. The district court held that amendment would be futile because Carvalho's claims "clearly are foreclosed by the inaccuracy requirement of § 1681i and § 1785.16." *Carvalho*, 588 F. Supp. 2d at 1100 n.11.

**[21]** Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires. However, the district court may exercise its discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). When the district court denies leave to amend because of futility of amendment, we will uphold such denial if "it is clear, upon *de novo* review, that the complaint would not be saved by any amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (internal quotation marks omitted).

**[22]** Because we hold that Carvalho cannot make a prima facie case of inaccurate reporting, we conclude that amendment to include other claims requiring inaccuracy would be

---

[12]Given that we affirm the summary judgment, we need not address the propriety of the denial of class certification. *See Skokomish Indian Tribe v. United States*, 332 F.3d 551, 564 (9th Cir. 2003).

futile. Therefore, the district court properly concluded that "there was no need to prolong the litigation by permitting further amendment." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

## VI

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**