# United States Court of Appeals for the Fifth Circuit

---

No. 24-40415

---

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2025

Lyle W. Cayce
Clerk

MARY REYES,

*Plaintiff—Appellant*,

*versus*

EQUIFAX INFORMATION SERVICES, L.L.C.,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:21-CV-639

---

Before ELROD, *Chief Judge*, and CLEMENT and RAMIREZ, *Circuit Judges*.

IRMA CARRILLO RAMIREZ, *Circuit Judge*:

Mary Reyes sued Equifax Information Services, L.L.C., alleging that it violated the Fair Credit Reporting Act (FCRA) by continuing to report a delinquent Citibank credit card account in her consumer file after she disputed the underlying charges as fraudulent. The district court granted summary judgment in favor of Equifax and dismissed all her claims. We affirm.

No. 24-40415

I

A

On August 18, 2019, at approximately 3:30 a.m., Reyes received text messages flagging suspicious charges on her Citibank credit card account. That same day, she called Citibank, which immediately canceled her credit card and issued her a new card with a new account number. All charges that had been made on the canceled credit card were transferred to her new Citibank account. After reviewing the transaction history, she identified multiple unauthorized charges totaling more than $2,500 that had been made at different locations throughout the Dallas/Fort Worth metroplex over several days prior to her call to Citibank. Reyes believed that her credit card had been "skimmed"[1] because she still had the card in her possession. She later filed police reports about the fraudulent charges.

Over the next few weeks, Reyes contacted Citibank to dispute the allegedly fraudulent charges, but Citibank contended they were valid. In September 2019, Reyes sent Citibank a letter requesting, among other things, reconsideration of her fraud claim. She also filed a complaint with the Consumer Finance Protection Bureau (CFPB).

---

[1] "Skimming occurs when devices illegally installed on or inside ATMs, point-of-sale (POS) terminals, or fuel pumps capture card data and record cardholders' PIN entries. Criminals use the data to create fake payment cards and then make unauthorized purchases or steal from victims' accounts." FBI, *Common Frauds and Scams*, https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/skimming (last visited June 13, 2025).

No. 24-40415

After October 2019, Reyes stopped making payments on the new Citibank account, maintaining that the outstanding charges were fraudulent. At some point, Citibank charged off the account and reported the unpaid balance of over $3,200 (including fees and accrued interest) to all three major credit reporting agencies, including Equifax.

On April 15, 2020, Reyes's attorney mailed Equifax a letter that states, in its entirety:

> My client, Mary Reyes wishes to dispute the following item: Citibank Advantage Mastercard [old account number], with an approximate balance of $3122.

> Upon information and belief, Client is a victim of Identity Theft. These are not her charges! Nor are they those of her husband Juan. Ms. Reyes has made multiple attempts to resolve this issue with no help from Citibank. See the attached documentation: Ms (sic) Reyes has filed police [reports] with The Fort Worth Police Department, The Dallas Police Department, and The Frisco Police Department. She has also made a complaint with the Consumer Finance Protection Bureau, as well as generated a Federal Trade Commission Identity Theft Affidavit. By law she has done more than enough to get this inaccurate tradeline corrected or deleted.

> On behalf of my client, I demand an immediate correction or atleast (sic) a deletion of this account.

> Pursuant to the Fair Credit Reporting Act, Please (sic) forward this dispute to the credit furnishers. If you are not going to forward them, please inform me so I may do so myself.

Even though Reyes's unpaid balance from the alleged fraud carried over to the new Citibank account and had been reported on her Equifax credit file as a "valid portion of [her] account balance," the dispute letter identified a

No. 24-40415

Citibank account number no longer in existence and that did not appear in her file.

On April 29, 2020, Equifax responded to Reyes by letter, explaining that the disputed item, her old "Citi Advantage Mastercard Account," was not reported in her Equifax credit file at the time.

On May 1, 2020, Equifax received a fraud referral from another credit reporting agency regarding Reyes's new Citibank account number. The next day, Equifax forwarded the dispute to Citibank through its Automated Consumer Dispute Verification (ACDV) system, and requested that it investigate the fraud allegation. Citibank confirmed that the information reported concerning the new account was accurate.

On June 18, 2020, Citibank sent Reyes a letter regarding her CFPB complaint, stating:

> We respectfully decline your request to issue credit for the $2,535.72 in fraud charges billed on your prior account . . . that you identified as unauthorized. Our records reflect the transactions were processed using the embedded chip, which cannot be duplicated. Because valid purchases were made before the disputed charges using the same Chip card, which you confirmed was in your possession, we consider the transactions to be a valid portion of your account balance.
>
> Because you disagree with the resolution of your claim, we previously requested the reporting agencies add a note to your credit profile stating that the information is "disputed by the consumer". Should you wish to have the "disputed by the

No. 24-40415

consumer" note removed from your credit profile, it will be necessary for you to contact us at the address listed above.[2]

On July 6, 2020, Reyes's attorney sent Equifax a second dispute letter, which continued to request the deletion of the old Citibank account. Equifax again responded to the letter, explaining the old account was not showing in her credit file.

On July 18, 2020, Equifax received another fraud referral from the same credit reporting agency about the new Citibank account. Equifax sent an ACDV request to Citibank, which again confirmed that the reported account information was accurate.

In August 2020, Reyes's application for a home improvement loan was denied. Reyes's Equifax credit report, which the lender considered in its decision, identified the following negative credit factors: (1) serious delinquency; (2) time since delinquency is too recent or unknown; (3) amount owed on delinquent accounts; and (4) number of accounts with delinquency.

Reyes's attorney sent Equifax a third dispute letter on October 5, 2020. The letter again only referenced the old Citibank account, but Equifax sent Citibank an ACDV request to verify information on the new account, and included the dispute letter. Citibank later verified that the information Equifax reported on the new account was accurate.

_____

[2] Citibank sent a substantially similar letter to Reyes on March 11, 2022.

No. 24-40415

On October 21, 2020, Equifax sent Reyes a letter explaining it had researched the new Citibank account and "verified that this item belongs to you." It also provided the account information reported in her file: the new Citibank account was a charged-off account with an outstanding balance of $3,312, the last payment was made in October 2019, and the account was closed at the consumer's request.[3]

B

Reyes sued Equifax alleging it negligently and willfully violated 15 U.S.C. § 1681e by failing to follow reasonable procedures in reporting information, as well as § 1681i by failing to conduct a reasonable investigation of her dispute. Equifax moved for summary judgment, arguing Reyes had failed to present evidence showing that (1) the information it reported was inaccurate, (2) it failed to follow reasonable procedures or conduct a reasonable reinvestigation of her disputes, and (3) it caused her any damages. Equifax also argued that her FCRA suit was an impermissible collateral attack involving a legal dispute between her and Citibank.

A magistrate judge recommended that the FCRA claims be dismissed because § 1681e and § 1681i both require a threshold showing that the credit entry in question was inaccurate, and there was no fact issue as to whether the Citibank account information reported by Equifax was inaccurate. The magistrate judge found that even if Reyes had demonstrated a fact issue as to

_____

[3] The letter, which was an exhibit to Reyes's summary judgment response, also noted that the account's credit history was modified but that information was redacted.

6

the reported information's accuracy, summary judgment was warranted because her claims amounted to an impermissible collateral attack on the validity of her debt with Citibank.

The district judge adopted the magistrate judge's recommendation over Reyes's objections and granted Equifax's motion for summary judgment. The district court agreed that Reyes could not prevail on her FCRA claims because she failed to provide evidence that Equifax's consumer file contained factually inaccurate information and because she could not collaterally attack her Citibank debt by suing Equifax.

Reyes appeals the district court's dismissal of her § 1681i reinvestigation claim.[4]

II

We review a summary judgment dismissal de novo, under the same standards used in the district court. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and

---

[4] Reyes does not challenge the district court's judgment on her § 1681e(b) claim in her brief, so she has abandoned that claim. *See Reagan Nat'l Advert. Of Austin, Inc. v. City of Austin*, 64 F.4th 287, 291 (5th Cir. 2023) ("Ordinarily, '[a]n appellant abandons all issues not raised and argued in its initial brief on appeal.'") (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)).

affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion." *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). This court "must consider all facts and evidence in the light most favorable to the nonmoving party." *Id.* If the movant meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmovant to "come forward with specific facts indicating a genuine issue for trial." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

## III

"Concerned by 'abuses in the credit reporting industry,' Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce." *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (citation omitted). "To achieve those goals, the Act regulates the consumer reporting agencies that compile and disseminate personal information about consumers." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021); *see* 15 U.S.C. § 1681a(f) (defining "consumer reporting agency"). The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id.* at § 1681(b). "Where possible, courts construe these obligations consistently with the Act's 'ambitious objective . . . which uses expansive terms to describe the adverse effects of unfair and inaccurate credit reporting and the

responsibilities of consumer reporting agencies.'" *Hammer*, 974 F.3d at 567 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 62, (2007)); *see also Wagner v. TRW, Inc.*, No. 97–30601, 1998 WL 127812, at *1 (5th Cir. Mar. 4, 1998) (unpublished) ("The FCRA is to be liberally construed in favor of the consumer."). A consumer can bring a civil action against a credit reporting agency for negligent or willful violations of its statutory obligations. *See id.* at § 1681n (willful noncompliance); *id.* at § 1681o (negligent noncompliance).

## A

Reyes argues the district court erred in concluding that the Citibank account information that Equifax reported in her consumer file was accurate.

Section 1681i sets forth the procedures a consumer reporting agency must follow when a consumer disputes the accuracy of information in the consumer's file. A consumer file is composed of "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). Generally, an item of information is "inaccurate" within the meaning of the FCRA "either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)).

Section 1681i provides that, upon receiving notice that a consumer disputes "the completeness or accuracy of any item of information" in her file, the consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is

No. 24-40415

inaccurate." *Id.* at § 1681i(a)(1)(A). In conducting its reinvestigation, the agency must "review and consider all relevant information submitted by the consumer" regarding the disputed information. *Id.* at § 1681i(a)(4). Within 30 days of notice of the dispute, the consumer reporting agency must either record the current status of the disputed information in the consumer's file, or delete or modify the disputed item of information if it is "inaccurate or incomplete or cannot be verified." *Id.* at § 1681i(a)(1)(A), (5)(A). "If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute." *Id.* at § 1681i(b). The consumer reporting agency must include this statement, or a summary of the dispute, with the disputed information in future consumer reports. *Id.* at § 1681i(c); *see also id.* at § 1681a(d) (defining "consumer report").

1

The district court found, and Reyes does not dispute, that she had to prove that the disputed information in her consumer file was inaccurate to prevail on her § 1681i claim.[5] We have never addressed whether inaccuracy is a requisite element of a § 1681i claim.

---

[5] Even though this issue was not directly raised by Reyes on appeal, "we may use our 'independent power to identify and apply the proper construction of governing law' to any 'issue or claim [that] is properly before the court, . . . not limited to the particular legal theories advanced by the parties.'" *Stramaski v. Lawley*, 44 F.4th 318, 326 (5th Cir. 2022) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("[W]hat questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals . . . .").

No. 24-40415

Although § 1681i(a)(1)(A) does not expressly require inaccuracy to establish a violation, it plainly states that a consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Id.* at § 1681i(a)(1)(A). Congress enacted the FCRA to protect consumers from the transmission of *inaccurate* credit information. *See id.* at § 1681; S. REP. NO. 108–166, at 5–6 (2003) ("The driving force behind the [1996 amendments to the FCRA] was the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected."). "Requiring an inaccuracy, even absent an express statutory mandate, is consistent with the FCRA's purpose to protect consumers from the transmission of inaccurate information about them." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (internal quotation and citation omitted). Other circuits agree that "without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (collecting cases).[6]

---

[6] *See, e.g.*, *Bibbs v. Trans Union LLC*, 43 F.4th 331, 344 (3d Cir. 2022) (holding that "without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail") (quotations omitted); *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 536 (6th Cir. 2024) (holding that "a showing of inaccuracy is an essential element of a § 1681i claim"); *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 811 (7th Cir. 2023) ("A [consumer reporting agency]'s liability under both § 1681e(b) and § 1681i(a) depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement."); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d

No. 24-40415

We join the other circuits in concluding that inaccuracy is a threshold requirement for § 1681i claims.

### 2

Here, the undisputed summary judgment evidence shows that the new Citibank account belonged to Reyes, over $2,500 in charges were incurred on the account, the charges had been made before Reyes reported them as fraudulent to Citibank, Reyes did not make any payments for those charges, the account was closed at Reyes's request, the account's outstanding balance of $3,312 (including fees and accrued interest) was charged off, and Citibank reported this information to Equifax. This information was correctly reported in her consumer file at the time Reyes filed a dispute with Equifax.[7] Because the Citibank account information in Reyes's consumer file was not "patently incorrect" or "misleading," *see Sepulvado*, 158 F.3d at 895, the district court did not err in concluding that the information Equifax reported was accurate.

### B

Reyes argues that there was a genuine issue of material fact as to the accuracy of the Citibank account reported by Equifax because she did not

---

1232, 1242 (10th Cir. 2015) (holding that proof of "inaccuracy of the report" is essential to prevail on a § 1681i(a) claim); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (explaining that a § 1681i claim "is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts") (emphasis omitted).

[7] Reyes clarified at oral argument that she and Citibank eventually entered into a confidential settlement agreement regarding the disputed account.

make the underlying charges and is not liable for charges that are fraudulent. She contends that the reported Citibank account information was inaccurate because whether she "owed the debt" (i.e., the outstanding balance) was contested and unresolved. The district court rejected Reyes's argument, explaining that because her alleged inaccuracy was "based on a not-yet-adjudicated position that the debt is not legally valid,"[8] it was not inaccurate for purposes of a § 1681i claim. The court concluded that "the FCRA does not provide a vehicle for Reyes to challenge the legal validity of her debt to Citibank by suing Equifax for accurately reporting that debt."

Several circuit courts, including district courts within our circuit, agree that a consumer may not use § 1681i's reinvestigation procedures to collaterally attack the validity of a reported debt. *See, e.g.*, *DeAndrade*, 523 F.3d at 68 (affirming summary judgment dismissal of § 1681i claim because consumer was "launching an impermissible collateral attack against a lender by bringing an FCRA claim against a consumer reporting agency"); *Carvalho*, 629 F.3d at 892 ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts.").[9] These courts have found that credit reporting agencies are not tribunals and "are neither qualified nor obligated to resolve legal issues."

---

[8] As the district court noted, Reyes's claims with Citibank were pending arbitration at the time of summary judgment.

[9] *See, e.g.*, *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567–68 (7th Cir. 2021); *Wright*, 805 F.3d at 1244–45; *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 946 (11th Cir. 2021); *Estrada v. Experian Info. Sols., Inc.*, 670 F. Supp. 3d 412, 423 (W.D. Tex. 2023).

*Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020); *Chaitoff*, 79 F.4th at 814 ("We have long held that [consumer reporting agencies] are not well suited to adjudicate legal defenses to a debt, so they are not liable for reporting information that may be legally inaccurate."); *Wright*, 805 F.3d at 1242 (explaining that a reasonable reinvestigation "does not require [consumer reporting agencies] to resolve legal disputes about the validity of the underlying debts they report"). Because consumer reporting agencies lack the authority to adjudicate legal disputes, "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Carvalho*, 629 F.3d at 891. Instead, they recognize that "[t]he FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed." *Wright*, 805 F.3d at 1244; *see Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) (noting that "the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the [consumer reporting agency]").

1

Reyes argues that we should not follow what she refers to as the "Collateral Attack Cases" because "their holdings contradict the express statutory requirements of the FCRA." She contends that "when a consumer reporting agency cannot, for whatever reason, verify the accuracy of disputed information," § 1681i(a)(5)(A) requires the consumer reporting agency to delete the information because it "cannot be verified." We disagree.

Section 1681i(a)(5) states, in relevant part, that "[i]f, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall [] promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation . . . ." Because "inaccurate" and "verified" are not defined in the FCRA, we look to the ordinary meaning of those terms. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (internal quotation marks omitted)); *United States v. Santos*, 553 U.S. 507, 511 (2008) ("When a term is undefined, we give it its ordinary meaning."). The ordinary meaning of "verify" is: "1 To prove to be true; confirm; substantiate. 2 To confirm the truth or truthfulness of. 3 To authenticate." *Webster's Collegiate Dictionary* 1064 (3d ed. 1919). As discussed, we previously defined "inaccurate" as applied in the FCRA context as "patently incorrect" or "misleading." *See Sepulvado*, 158 F.3d at 895.

In *Mader v. Experian Info. Sols., Inc.*, the consumer alleged that Experian was inaccurately reporting his student loan debt because it was discharged following his bankruptcy. 56 F.4th 264, 267 (2d Cir. 2023). Although he claimed that the debt was a private loan and not subject to the discharge exemption for education loans, the bankruptcy decree did not explicitly discharge this debt and had noted that student loan debts are not

discharged. *Id.* at 268. The court explained that if an alleged inaccuracy "evades objective verification"—like inaccuracies that turn on legal disputes—it is not cognizable under the FCRA. *Id.* at 269–70. Because there was an unresolved legal question regarding whether the consumer owed the debt, its reporting by Experian, as found by the court, was "not sufficiently objectively verifiable to render [his] credit report 'inaccurate' under the FCRA." *Id.* at 270. We find the Second Circuit's reasoning persuasive and apply it in this case.

Although § 1681i "requires the prompt deletion if the disputed information is inaccurate or unverifiable," the alleged inaccuracy reported by the consumer reporting agency must first be "sufficiently objectively verifiable" to be actionable under the FCRA. *See id.*; *see also Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023) ("[A]n FCRA claim alleges an 'inaccuracy' so long as the challenged information is objectively and readily verifiable."); *cf. Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) ("Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation."). This reading is faithful to the statutory text and the legislative purposes behind the FCRA. *See* S. Rep. No. 108–166, at 7 ("Achieving the accuracy in consumer report information was a main goal of the FCRA when it was enacted in 1970."); *see also United States v. Marshall*, 798 F.3d 296, 309 (5th Cir. 2015) ("Where possible, statutes must be read in harmony with one another so as to give meaning to each provision." (citation omitted)). In

contrast, reading § 1681i(a)(5)(A) to require the deletion of debt information because of inaccuracies which "cannot be verified" until all legal disputes are fully adjudicated would frustrate the FCRA's goal of ensuring "fair and accurate credit reporting. *Id.* at § 1681(b).

2

Reyes contends that several years before the Collateral Attack Cases were decided, this court "correctly applied the deletion requirement of Section 1681i(a)(5)(A) to the 'cannot be verified' condition" in *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986) and *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993). In *Pinner*, we held that it was unreasonable for the consumer reporting agency that, despite receiving evidence of a contentious, personal dispute between the plaintiff and the manager of his ex-employer, contacted only the manager to verify the debt (which was later found inaccurate). 805 F.2d at 1260–62. In *Stevenson*, we held that the consumer reporting agency was liable for failing to promptly delete disputed information, where there was evidence that it had determined that certain reported accounts were either confirmed inaccurate by the furnisher or unverifiable because the furnisher did not respond to its verification requests. 987 F.2d at 293. Reyes's reliance on these cases is misplaced.

Although both cases recognized that a consumer reporting agency can be liable for not deleting "unverifiable" information in certain circumstances, they did not address a claimed inaccuracy that would require the consumer reporting agency to adjudicate a legal dispute like the validity of debt. Additionally, unlike here, the disputed information in *Pinner* and

No. 24-40415

*Stevenson* were confirmed to be factually inaccurate, and the liability of the consumer reporting agencies ultimately turned on the reasonableness of their investigations.

We find persuasive the reasoning of the Collateral Attack Cases and join the other circuits in holding that consumer reporting agencies are not required to investigate the legal validity of disputed debts under the FCRA.[10]

\*     \*     \*

The judgment of the district court is AFFIRMED.

---

[10] After oral argument, Reyes filed a Rule 28(j) letter to alert us to the Third Circuit's recent decision in *Ritz v. Equifax Information Services, LLC*, 2025 WL 1303945 (3d Cir. May 6, 2025). That non-binding case concerned the investigation obligations of a *furnisher* under 15 U.S.C. § 1681s-2. *Id.* at \*4–5. Accordingly, we do not find the opinion relevant to the resolution of this case.