**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT H. HARRIS,
            *Plaintiff-Appellant,*

v.

BANKERS LIFE AND CASUALTY
COMPANY; KENNETH L. BROWN,
            *Defendants-Appellees.*

No. 04-35115

D.C. No.
CV-03-00093-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
June 10, 2005—Seattle, Washington

Filed October 6, 2005

Before: David R. Thompson, M. Margaret McKeown, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge McKeown

13861

## COUNSEL

L. Randall Bishop, Jarussi & Bishop, Billings, Montana, for the plaintiff-appellant.

John R. Gordon, Spoon, Gordon & McHugh, Missoula, Montana, for the defendants-appellees.

## OPINION

McKEOWN, Circuit Judge:

We consider for the first time in this circuit whether the jurisdictional facts supporting removal of an action from state court to federal court must be apparent from the face of the initial pleading or whether the mere spectre of removability triggers a duty of inquiry. Specifically, is removability determined by the face of the initial pleading or by defendant's knowledge, constructive or otherwise, of the requisite jurisdictional facts? Our interpretation of 28 U.S.C. § 1446 leads us to join our sister circuits in holding that the "thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face" the facts necessary for federal court jurisdiction. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *see also Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) ("[W]e will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper."). Consequently, we affirm the district court's denial of the motion to remand this case to state court; the removal was both proper and timely.

## BACKGROUND

In 1972, Robert Harris bought a disability and life insurance policy from Bankers Life & Casualty Co. ("Bankers"). When a heart attack disabled Harris in 2002, he made a demand for his monthly disability benefit. Bankers made two

payments and then refused to make further payments, claiming that Harris was only "partially disabled."

In January 2003, Harris filed a suit in Montana state court against Bankers and the Bankers insurance agent who sold Harris his policy, Kenneth Brown. Harris pleaded contract and state statutory claims against Bankers and misrepresentation and fraud claims against Brown. The complaint stated the following with respect to the parties: 1) Harris is a resident of Montana; 2) Bankers is an Illinois corporation authorized and licensed to sell insurance policies in Montana; and 3) "In May, 1972, Defendant KENNETH L. BROWN, resided in . . . Montana, and was a 'Licensed Resident Agent' in . . . Montana for BANKERS LIFE." Harris' original and amended state complaints did not assert a current place of citizenship for Brown. Harris' state complaint was served on Bankers on January 28, 2003.

In the state court action, Bankers produced various documents in response to Harris' discovery requests. Among the documents was an index or "agent" card pertaining to Brown that included the following information: 1) Brown's birth date, 2) Brown's social security number, 3) Brown's address in Kentucky as of 1973, and 4) a statement that Brown was terminated by Bankers in 1973 due to health problems. Bankers also provided the following response to an interrogatory requesting the name, last-known address, and telephone number of every sales agent or representative who solicited the sale of disability or income protection policies in Montana since 1972: "[E]fforts are currently being made to determine if sales agents or representatives working [in] Montana over thirty (30) years ago can be located. This answer will be supplemented in accordance with the Montana Rules of Civil Procedure as discovery progresses."

Trial was set for February 2004. In late October 2003, Bankers filed a motion to continue the trial date because,

among other reasons, Harris had not yet served or dismissed Brown, a named party in the suit.

In an October 21, 2003 letter, Harris' counsel expressed opposition to any efforts to continue the trial date. From this communication, Bankers concluded that Harris had effectively abandoned his claims against Brown because "the current deadlines set in the State Court Action would not be achievable" if Harris intended to pursue his claims against Brown. Bankers then wrote to Harris' counsel asking whether Harris intended to pursue service against Brown. When no response was forthcoming, Bankers filed a notice of removal on November 3, 2003, claiming that the thirty-day clock for removal under 28 U.S.C. § 1446(b) began to run on October 21, 2003. Bankers asserted that there was complete diversity because Harris is a citizen of Montana and Bankers is a citizen of Illinois and "Brown is not a party to this matter" as a result of Harris' failure to serve Brown. Bankers' position was that complete diversity was not evident from Harris' initial pleading or amended pleading because the only residency stated for Brown was Butte, Montana.

Following the removal notice, Harris' counsel stated that he was continuing to search for Brown; he then filed a motion for remand in federal district court. Only a few days later, Harris' counsel filed an affidavit in federal court stating that Brown died in 1983; this information was gleaned by cross-referencing Brown's data from the index card produced during discovery with a Social Security Death Index available on the Internet.

Reasoning that Harris had abandoned his claim against Brown or, alternatively, that Brown's presence could be ignored because naming a dead defendant was the equivalent of fraudulent joinder,[1] the district court concluded that Bank-

---

[1]Because we conclude that Bankers' removal was timely, we need not address the fraudulent joinder issue.

ers' removal was, "in substance," timely pursuant to 28 U.S.C. § 1446(b). The court expressed frustration with Harris' timeliness argument:

> Plaintiff's argument against timeliness of removal is grounded, in substance, in the scenario that he was entitled to name Brown, a person dead for over 19 years, as a party, take no action to pursue the claims pleaded against Brown, represent to opposing counsel, even after the case was removed to this Court, "that plaintiff continues to search for Mr. Brown," and nevertheless assert that Bankers did not act in a timely fashion to remove the case upon concluding that Plaintiff had abandoned the claim against Brown. Acceptance of that position would require approval by the Court of a measure of sharp practice bordering upon a fraud upon the Court. It will not do so.

Harris appeals the district court's denial of his motion for remand, a question we review de novo. *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 760 (9th Cir. 2002).

## ANALYSIS

The procedure for removal is set out in 28 U.S.C. § 1446(a):

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court . . . a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

[1] The statute provides two thirty-day windows during which a case may be removed—during the first thirty days

after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper "from which it may first be ascertained that the case is one which is or has become removable" if "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b).

Three removal scenarios are presented in a potential diversity case: 1) the case clearly is removable on the basis of jurisdictional facts apparent from the face of the complaint, i.e., complete diversity of citizenship; 2) the case clearly is not removable on the basis of jurisdictional facts apparent from the face of the complaint, i.e., lack of complete diversity; or 3) it is unclear from the complaint whether the case is removable, i.e., the citizenship of the parties is unstated or ambiguous. This latter scenario, sometimes referred to as an "indeterminate" pleading, is the one at issue here.

Harris' state court complaint did not allege Brown's current citizenship, only his past residence. Indeed, it is not uncommon for a state court pleading to omit the necessary facts needed to determine diversity. "[T]he citizenship of the parties or the corporation's principal place of business or its state of incorporation normally will not be set forth in a complaint filed in a state court so that that pleading therefore will not reveal the existence of diversity of citizenship jurisdiction." 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3734 at 368-69 (3d ed. 1998) (footnotes omitted). Obviously, diversity of citizenship is a federal, not a state, concern. *See* 28 U.S.C. § 1332 (requiring that suit be between "citizens of different States" for federal jurisdiction predicated on diversity of citizenship).

**[2]** The question we must decide is whether, under 28 U.S.C. § 1446(b), the burden lies with the defendant to investigate the necessary jurisdictional facts within the first thirty days of receiving an indeterminate complaint, or whether the determination be limited to the face of the initial pleading. Courts are divided on this issue, although every circuit court

to consider the question has rejected the duty to investigate approach.[2] The Ninth Circuit has not resolved this question.[3]

Our decision in *Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249 (9th Cir. 1989), a federal question case, skirted this issue but did not squarely decide it.[4] In *Cantrell*, the plaintiff sued her insurance company in state court for unlawful rescission of her contract. *Id.* at 1249-50. The claims in Cantrell's state complaint were preempted by federal law—the Employee Retirement Income Security Act. More than two years after Cantrell filed her state court complaint, the defendants removed the case to the federal court. Thus, the defendants' only option for establishing timely removal was under the second thirty-day window of 28 U.S.C. § 1446(b). *Id.* at 1254. The defendants had to demonstrate that they removed

---

[2]*See Moore's Federal Practice 3d*, 107.30[3][f] (3d ed. 2005) ("Courts are split on whether to impose a duty to investigate and determine removability when the initial pleading indicates that the right to remove *may* exist. When it is apparent that removal may be justified, some courts impose a duty on potential movants to investigate potential reasons for removal. Other courts require that the right to remove must be unequivocally apparent from the pleading and impose no duty to investigate when the right to remove may be indicated by the pleading.") (emphasis in original) (footnotes omitted).

[3]*See Rico-Chinn v. Prudential Ins. Co. of Am.*, No. 05-01975, 2005 WL 1632289, at *2 (N.D. Cal. July 12, 2005) ("The Ninth Circuit has not decided the issue of whether the jurisdictional facts supporting removal must be apparent from the face of the complaint in order for the 30-day period set forth in the first paragraph of § 1446(b) to commence on the date the complaint is received.").

[4]*Moore's Federal Practice* cites to *Cantrell* as an example of a case that held there was a duty to investigate grounds for removal where the initial pleading failed to list a federal cause of action. *Moore's*, *supra* note 2, at n.100; *see also Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035 n.2 (10th Cir. 1998) (citing *Cantrell* among cases that held "where it is apparent that removal *may* be justified a duty is imposed upon movants to investigate potential reasons for removal") (emphasis in original). Unlike *Moore's* and *Akin*, we do not read *Cantrell* as imposing a duty upon a defendant to investigate within the first thirty days of receiving an indeterminate complaint.

the case within thirty days of receiving a "paper," in this case Cantrell's amended complaint, that revealed the case was removable. The court rejected defendants' argument and concluded that the case was removable on the basis of the initial complaint. Plaintiff's "artful pleading" of state law could not avoid federal jurisdiction, nor was any discovery necessary to reveal the true nature of Cantrell's claims: "Cantrell's original complaint gave [defendants] notice of the federal question raised by Cantrell's complaint . . . ." *Id.* at 1255 n.11 & 1256.

Our analysis in *Cantrell* presages the more precise holding we reach today: We now conclude that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry. Thus, the first thirty-day requirement is triggered by defendant's receipt of an "initial pleading" that reveals a basis for removal. If no ground for removal is evident in that pleading, the case is "not removable" at that stage. In such case, the notice of removal may be filed within thirty days after the defendant receives "an amended pleading, motion, order or other paper" from which it can be ascertained from the face of the document that removal is proper. *See* 28 U.S.C. § 1446(b). In coming to this resolution, we consider the language of the statute and survey the various approaches taken by our sister circuits and district courts.

**[3]** We start with the plain language of the statute. The second thirty-day period for removal applies when "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b). Under these circumstances, "a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." *Id.* In other words, even if a case were not removable at the outset, if it is rendered removable by virtue of a change in the parties or

other circumstance revealed in a newly-filed "paper," then the second thirty-day window is in play.

**[4]** Thus, the first thirty-day period for removal in 28 U.S.C. § 1446(b) only applies if the case stated by the initial pleading is removable on its face. If we were to flip the burden and interpret the first paragraph of 28 U.S.C. § 1446(b) (the first thirty-day window) to apply to all initial pleadings unless they clearly reveal that the case is not removable, defendants would be faced with an unreasonable and unrealistic burden to determine removability within thirty days of receiving the initial pleading.

**[5]** Our reading of the statute is consistent with the Fourth Circuit's view in *Lovern v. General Motors Corp.*, where the court reasoned that a "case stated by the initial pleading is not removable" when the ground for removal is not on the face of the initial pleading:

> [W]e conclude that only where an initial pleading reveals a ground for removal will the defendant be bound to file a notice of removal within 30 days. Where, however, such details are obscured or omitted, or indeed misstated, that circumstance makes the case "*stated* by the initial pleading" not removable, and the defendant will have 30 days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file its notice of removal . . . .
>
> Thus, the statute expressly encompasses the case in which the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been *manifested* only by later papers, revealing the grounds for removal for the first time. It thus appears that the statute does not preclude defendants from removing a case where their discovery of the grounds of federal jurisdiction

is belated because facts disclosing those grounds were inadequately or mistakenly stated in the complaint.

121 F.3d 160, 162 (4th Cir. 1997) (emphasis in original).

**[6]** In rejecting the defendant's subjective knowledge as a test for notice, the Fourth Circuit emphasized reliance on "the four corners of the initial pleading or subsequent paper:"

> [W]e will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper.

*Id.* We join with the other circuits that have adopted the same approach to indeterminate pleadings—the ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin.[5]

---

[5]*See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) ("[T]he summons with notice names RJU as a defendant and seeks damages and equitable relief with respect to this entity, but does not disclose its address. This defect makes it impossible to assess whether there is complete diversity and, hence, a basis for removal. Accordingly, we find no error with the district court's conclusion that removability could not be ascertained from the face of that document."); *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) ("We find the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount."); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999) (holding that defendant "could only guess" if the initial pleading that claimed damages "in excess of $10,000"

**[7]** Applying this interpretation of § 1446(b), we quickly resolve that Bankers' removal of this case was timely. The face of Harris' initial pleading did not affirmatively reveal information to trigger removal based on diversity jurisdiction because the initial pleading only stated Brown's 1972 residency, not his citizenship, and certainly not his citizenship as of the filing of the complaint. Diversity jurisdiction is based on the status of the parties at the outset of the case—here, their state of citizenship in 2003. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (parties' actual citizenship, not residency, determines diversity); *Smith v. Sperling*, 354 U.S. 91, 93, n.1 (1957) (diversity of citizenship is determined as of the filing of the complaint). Thus, the case was not removable on the basis of the initial pleading.

**[8]** Instead, the case became removable on October 21, 2003, when it became apparent that Harris had abandoned his claims against Brown. At that point, the complete diversity between the remaining parties first became ascertainable. *See S. Pac. Co. v. Haight*, 126 F.2d 900, 905 (9th Cir. 1942) (notice of removal timely where plaintiff announced intent to proceed to trial without serving resident defendants). Bankers filed its notice of removal within the thirty day window.

---

stated a case that was removable and refusing to start the thirty-day clock at receipt of the initial pleading); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) ("We stated that the removal clock begins to run 'from the defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.' . . . By the same token, the removal clock began to run in the instant case only when the defendants received a pleading that revealed on its face that Leffall was asserting a cause of action based on federal law."); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992) (same); *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d Cir. 1993) ("The inquiry begins and ends within the four corners of the pleading. The inquiry is succinct: whether the document informs the reader, to a substantial degree of specificity, whether all the elements of federal jurisdiction are present.") (quoting *Rowe v. Marder*, 750 F. Supp. 718, 721 (W.D. Pa. 1990), *aff'd by* 935 F.2d 1282 (3d Cir. 1991).

Harris admits that Brown's citizenship was not revealed on the face of his initial pleading, but claims there was a clue that imposed a duty to investigate further. According to Harris, Bankers should have looked in its files within the first thirty days, found the 1973 index card pertaining to Brown, used the information on the index card to ferret out details about Brown, and then cross-referenced the date with the Internet or other sources to find out that Brown had died ten years *after* he was terminated by Bankers. Relying on *Kaneshiro v. North America Co. for Life and Health Ins.*, 496 F. Supp. 452 (D. Haw. 1980),[6] Harris urges us to adopt a rule that the first thirty-day period should apply where the initial pleading provides a "clue" as to removability:

> [T]here appears to be a line of support for placing on the defendant desiring removal the burden of scrutinizing the plaintiff's initial pleading, even if it is indeterminate on its face, and of removing within 30 days, at least unless the initial pleading provides "no clue" that the case is actually removable. . . . [T]he second paragraph of § 1446(b) is not applicable to indeterminate pleadings, unless they provide "no clue" to the fact that the case is actually removable.

*Id.* at 460.

Whether or not the "clue" and "burden [to] scrutiniz[e]" language in *Kaneshiro* should be stretched as far as Harris proposes is of little import as we decline to adopt *Kaneshiro*'s reasoning. Significantly, in the twenty-five years since the

---

[6]A number of district courts have adopted *Kaneshiro*'s "clue" analysis. *See e.g.*, *Kuhn v. Brunswick Corp.*, 871 F. Supp. 1444, 1446 (N.D. Ga. 1994); *Golke v. Lee Lumber & Bldg. Materials Corp.*, 671 F. Supp. 568, 570-71 (N.D. Ill. 1987); *Richman v. Zimmer, Inc.*, 644 F. Supp. 540, 541-42 (S.D. Fla. 1986).

case was decided, no federal circuit court of appeals has embraced its rationale.[7]

The jurisdictional and procedural interests served by a bright-line approach are obvious. First and foremost, objective analysis of the pleadings brings certainty and predictability to the process and avoids gamesmanship in pleading.[8] Just as important, an objective baseline rule avoids the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient "clue," whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry.[9]

---

[7]We note that *Moore's Federal Practice* attempts to harmonize these two lines of cases:

> When a case is removable, but the initial pleading does not reveal a ground for removal because the potential grounds are obscured, omitted, or misstated, the case *as stated* by the initial pleading is deemed not removable. . . . Thus, if in fact grounds for removal exist, i.e., there is in fact complete diversity, but neither the pleadings nor other papers reveal the citizenship of the parties, the clock does not begin to run.

> On the other hand, if grounds exist, and the defendant had sufficient knowledge of the existence of grounds for removal, the 30-day period begins to run. Indeed, indeterminate pleadings may provide the basis for removal unless they provide "no clue" as to the fact that the case is removable.

*Moore's*, *supra* note 2, at § 107.30[3](a)(ii)(A) (footnotes omitted). If "no clue" means the basis for removability cannot be determined from the face of the pleadings, we agree with *Moore's* characterization. But if the "clue" test invokes a duty to investigate beyond the pleadings, the "clue" cases cannot be harmonized with the prevailing view.

[8]*See In re Willis*, 228 F.3d at 897 ("[T]his rule prevents a plaintiff from disguising the amount of damages until after the thirty-day time limit has run to avoid removal to federal court.").

[9]*See Soto v. Apple Towing*, 111 F. Supp. 2d 222, 226 (E.D.N.Y. 2000) ("[T]here is no requirement in 28 U.S.C. § 1446(b) that a defendant exercise a duty to investigate, and this Court will not read into the statute such a condition. To do so would invite wasteful litigation as parties spar over the issues of diligence and ascertainability."); *Chapman*, 969 F.2d at 163 ("[Imposing a duty to investigate when a defendant receives an indetermi-

We are unpersuaded by the argument that a predictable rule will result in strategic delay in removal, thereby burdening the state courts with a case that will ultimately be removed. Once defendant is on notice of removability, the thirty-day period begins to run. Defendant has neither the incentive nor the ability to tinker with either actual notice or the time frame.

Additionally, 28 U.S.C. § 1446(b) prevents, at least in the context of removal based on diversity, unreasonable waste of judicial resources by limiting the extended period of removal to one year after "commencement of the action." The one-year bar gives the defendant sufficient incentive and time to determine the facts to justify removal without imposing an undue burden to investigate removal within the first thirty days of receiving an indeterminate complaint. *See Lovern*, 121 F.3d at 163 ("This [one-year] bar creates, we believe, a sufficient incentive for defendants promptly to investigate the factual requisites for diversity jurisdiction, including the citizenship of the plaintiff and the amount in controversy.").

Our reluctance to embrace the *Kaneshiro* framework is also motivated by the concern that defendants may be encouraged to engage in premature removals in order to ensure that they do not waive their right to removal. Otherwise, defendants will be subject to a court's post-hoc consideration of whether there was a "clue" in the initial pleading and whether the defendant exercised due diligence to discover the grounds for removability.[10] As observed in *Lovern*, the pressure to file a

nate complaint as to removability] would needlessly inject uncertainty into a court's inquiry as to whether a defendant has timely removed a case, and as a result would require courts to expend needlessly their resources trying to determine what the defendant knew at the time it receive the initial pleading and what the defendant would have known had it exercised due diligence.").

[10]*See Chapman*, 969 F.2d at 163 ("[A rule requiring removal based on an indeterminate initial pleading] would encourage defendants to remove

premature notice of removal may lead to the imposition of Rule 11 sanctions.[11]

Finally, we are not unmindful of the canon that instructs that removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Our interpretation of 28 U.S.C. § 1446(b) is consistent with the goal of the canon, which guards against premature and protective removals and minimizes the potential for a cottage industry of removal litigation. By assuring that removal occurs once the jurisdictional facts supporting removal are evident, we also ensure respect for the jurisdiction of state courts.

**AFFIRMED.**

---

prematurely cases in which the initial pleading does not affirmatively reveal the amount in controversy is in excess of $50,000 so as to be sure that they do not accidentally waive their right to have the case tried in federal court. We believe the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth, by adopting a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount.").

[11]*See Lovern*, 121 F.3d at 163 ("If a defendant were required to file a notice of removal within 30 days after the service of the initial pleading, even where that pleading did not reveal a ground for removal, he would often be faced with an intractable dilemma of either risking Rule 11 sanctions for noticing removal without making an adequate inquiry or foregoing removal altogether. The statute did not intend to put a defendant to this choice.").