**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1644

NORTHROP GRUMMAN TECHNICAL SERVICES, INC.,

Plaintiff - Appellant,

v.

DYNCORP INTERNATIONAL LLC,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Senior District Judge. (1:16−cv−00534−JCC−IDD)

Argued: May 9, 2017                     Decided: July 28, 2017

Before GREGORY, Chief Judge, and KING and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Chief Judge Gregory and Judge King joined.

**ARGUED:** Catherine Carroll, WILMER CUTLER PICKERING HALE & DORR LLP, Washington, D.C., for Appellant. Attison Leonard Barnes, III, WILEY REIN, LLP, Washington, D.C., for Appellee. **ON BRIEF:** William B. Porter, BLANKINGSHIP & KEITH, P.C., Fairfax, Virginia; Edward N. Siskel, Howard M. Shapiro, Madhu Chugh, Jamie S. Gorelick, WILMER CUTLER PICKERING HALE & DORR LLP, Washington, D.C., for Appellant. Rand L. Allen, Nicole J. Owren-Wiest, Rebecca L. Saitta, WILEY REIN LLP, Washington, D.C.; Richard C. Sullivan, Jr., BEAN KINNEY & KORMAN PC, Arlington, Virginia, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In 2007, Northrop Grumman entered into a contract with DynCorp, which served as a subcontract for DynCorp to supply personnel in support of Northrop Grumman's performance of a prime contract with the United States Department of Defense. A dispute arose regarding DynCorp's billing practices and, in March 2015, Northrop Grumman filed suit against DynCorp in a Virginia state court seeking to compel DynCorp to provide documentation to substantiate DynCorp's invoices. DynCorp later filed counterclaims against Northrop Grumman based on Northrop Grumman's refusal to pay over $40 million in outstanding invoices.

After the state case had been pending for over a year, and shortly before trial, Northrop Grumman filed a notice of removal to federal court. Northrop Grumman asserted removal jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442, claiming as a federal defense that the case was unripe and thus should be litigated in a federal forum. The district court granted DynCorp's motion to remand. Among other things, the district court held that the notice of removal was untimely, and that Northrop Grumman had waived any right to removal.

Upon our review, we affirm the district court's order remanding the case to the state court. Northrop Grumman filed an untimely notice of removal after demonstrating a clear intent to pursue the case to completion in the state court.[1]

---

[1] In light of these holdings, we do not address the district court's other bases for remanding the case, including that ripeness does not constitute a colorable federal defense and that Northrop Grumman did not satisfy the causal nexus requirement of the
(Continued)

2

I.

In 2007, the United States Department of Defense (DOD, or the government) awarded Northrop Grumman a prime contract to support the government's efforts to reduce narcotics trafficking in Afghanistan. Shortly thereafter, Northrop Grumman and DynCorp entered into a subcontract for DynCorp to supply personnel for Northrop Grumman's performance of the prime contract. The subcontract and associated task orders incorporated descriptions of certain "labor categories" established by the government in the prime contract. These descriptions included the duties, experience, and qualifications for persons assigned, or "mapped," to each labor category. DynCorp proposed hourly rates of payment for the labor categories to which its employees would be assigned, and the subcontract required DynCorp to provide documentation substantiating the labor costs in its invoices.

The parties agree that the labor categories in the prime contract were a poor fit for the type of work being performed by DynCorp personnel. Nevertheless, because the government declined to revise the labor categories, Northrop Grumman advised DynCorp to map its employees based on the existing categories.[2] In 2014, citing concerns that

federal officer removal statute. We similarly do not address Northrop Grumman's contention that an original plaintiff can remove a case to federal court.

[2] In 2013, Northrop Grumman obtained from an Army contracting officer a written waiver of the labor category descriptions, approving DynCorp's assignment of certain employees to particular categories and establishing a process for approval of future employees. However, about one year later, the government rescinded this waiver memorandum.

federal investigators were questioning DynCorp's labor mapping practices, Northrop Grumman sought documentation from DynCorp to substantiate DynCorp's labor mapping and billing. When DynCorp refused these requests, Northrop Grumman stopped submitting DynCorp's invoices to the government for payment and, in November 2014, informed DynCorp that Northrop Grumman rejected the labor charges reflected in all current invoices.

In March 2015, Northrop Grumman filed suit against DynCorp in Fairfax County Circuit Court (the state court). In an amended complaint filed in June 2015, Northrop Grumman sought an order compelling DynCorp to provide requested documentation to substantiate its invoices. Northrop Grumman also asserted a breach of contract claim based on DynCorp's alleged refusal to maintain and produce records as required by the subcontract.

In September 2015, DynCorp filed counterclaims in the state court against Northrop Grumman for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. The counterclaims were based on Northrop Grumman's failure to pay DynCorp over $40 million in outstanding invoices.

Northrop Grumman later filed a demurrer to the counterclaims. The state court overruled the demurrer on the claims for breach of contract and breach of the duty of good faith and fair dealing, and sustained the demurrer without prejudice on the unjust enrichment count. Following this ruling, DynCorp filed amended counterclaims in November 2015, alleging the same three causes of action.

4

In December 2015, Northrop Grumman filed an answer to the amended counterclaims. In its answer, Northrop Grumman asserted 21 affirmative defenses, including that the counterclaims were not ripe for adjudication. The parties also engaged in extensive discovery up to the day the notice of removal was filed. Trial originally was scheduled for April 2016, but was postponed until July 2016 after DynCorp filed its counterclaims.

In the midst of these state court proceedings, on April 22, 2016, Northrop Grumman filed a separate, administrative claim for contract interpretation with the United States Army, pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-09 (the CDA claim). In the CDA claim, Northrop Grumman sought a determination from the government whether DynCorp properly had assigned its employees to particular labor categories in accordance with the DOD's task orders. Under the terms of the parties' subcontract, the outcome of the CDA claim would be binding on both parties.

The DOD acknowledged receipt of the CDA claim on April 29, 2016. On the same day, Northrop Grumman filed a motion to dismiss or stay in state court based on the pending CDA claim. Nevertheless, one week later, Northrop Grumman proceeded to advance the state court litigation by filing a motion in that court requesting a jury trial.

Northrop Grumman filed its notice of removal on May 12, 2016. This notice was filed 244 days after DynCorp filed its original counterclaims, and 178 days after Northrop Grumman received DynCorp's amended counterclaims. Northrop Grumman asserted federal jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442, claiming that the pending CDA claim rendered DynCorp's counterclaims unripe because the

5

government's decision would be dispositive of the counterclaims and binding on the parties.[3]  According to Northrop Grumman, this defense of lack of ripeness constituted a colorable federal defense that Northrop Grumman, as a federal contractor, was entitled to litigate in federal court.

DynCorp filed a motion in the district court to remand to the state court on several bases, including that the notice of removal was untimely and that Northrop Grumman had waived its right to removal.  The district court granted DynCorp's motion to remand, and this appeal followed.

## II.

Northrop Grumman argues that its notice of removal was timely under 28 U.S.C. § 1446(b) (the removal statute) because the notice was filed within 30 days of Northrop Grumman's submission of its CDA claim to the government on April 22, 2016, and the government's acknowledgement of that claim one week later.  In Northrop Grumman's view, its federal ripeness defense did not become available until the CDA process was initiated.  Northrop Grumman contends that it could not have filed the CDA claim earlier because Northrop Grumman was awaiting certain DynCorp documents that were produced during the course of the state court discovery.  Relatedly, Northrop Grumman argues that it did not waive its right to removal by participating in the state court

---

[3] Although Northrop Grumman contends that the pending CDA claim rendered DynCorp's counterclaims unripe, Northrop Grumman does not assert that the administrative CDA process is a requirement that must be exhausted before the claims can be litigated in federal court.

litigation, because Northrop Grumman filed the notice of removal as early as possible in the state court proceedings.

In response, DynCorp contends that the 30-day timeline for removal began when DynCorp filed its original counterclaims in September 2015 or, at the latest, when DynCorp filed its amended counterclaims in November 2015, because the substance of the counterclaims put Northrop Grumman on notice that the claims could be resolved by the CDA process. According to DynCorp, Northrop Grumman's contention that it may remove a case six to eight months after receiving notice of the nature of DynCorp's claims is contrary to the plain language and purpose of the 30-day deadline fixed by the removal statute. DynCorp further contends that Northrop Grumman demonstrated its clear and unequivocal intent to remain in state court by engaging in defensive litigation for months after receiving the counterclaims, and thereby waived any right to removal. We agree with DynCorp's arguments.

We review de novo the district court's decision granting a motion to remand for lack of jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442.[4] *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016). When a district court concludes that a party has waived its right to removal, we review this factual finding for clear error. *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991).

---

[4] Although orders remanding cases to state court generally are not reviewable on appeal, we may review such an order when, as here, the removal was made pursuant to the federal officer removal statute, 28 U.S.C. § 1442. *See id.* § 1447(d).

Under Section 1442, a federal officer "or any person acting under that officer" under certain circumstances may remove to federal district court a civil action brought against him in state court. 28 U.S.C. § 1442. A defendant seeking to remove a case under Section 1442 must establish "(1) [the defendant] is a federal officer or a person acting under that officer; (2) a colorable federal defense; and (3) the suit is for an act under color of office, which requires a causal nexus between the charged conduct and asserted official authority." *Ripley*, 841 F.3d at 209-10 (citations, alterations, and quotation marks omitted). A government contractor is entitled to removal under Section 1442 when the contractor satisfies these requirements. *See id.*

A party seeking to remove an action must file a notice of removal within 30 days of receiving the initial pleading in the case. 28 U.S.C. § 1446(b)(1). If, however, the "case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after *receipt* by the defendant . . . *of* a copy of an amended pleading, motion, order *or other paper from which it may first be ascertained that the case is one which is or has become removable*." *Id.* § 1446(b)(3) (emphasis added).

After a case becomes removable, a party may waive its "right to removal by demonstrating a 'clear and unequivocal' intent to remain in state court." *Grubb*, 935 F.2d at 59 (citation omitted). A defendant demonstrates this intent by engaging in "substantial defensive action" in state court before filing a notice of removal. *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998), *abrogated in part on other grounds by Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572 (2004). However, a finding of waiver is appropriate only in "extreme situations," when judicial economy,

8

fairness, and comity demand it. *Grubb*, 935 F.2d at 59 (citing *Rothner v. City of Chicago*, 879 F.2d 1402, 1416 (7th Cir. 1989)).

Applying these principles, we agree with the district court's conclusion that the CDA claim drafted and submitted by Northrop Grumman, the defendant to DynCorp's counterclaims, cannot constitute an "other paper" from which it was first ascertainable that the case was or had become removable to federal court. 28 U.S.C. § 1446(b)(3). We first observe that we have interpreted the "motion, order or other paper" requirement broadly to include "any information received by the defendant, whether communicated in a formal or informal manner." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (citation and internal quotation marks omitted). The purpose of this requirement is to ensure that a defendant receives adequate notice that a case is removable before being subject to the 30-day deadline to file its removal notice. *See Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). Accordingly, under the statute, the 30-day removal period is triggered upon the defendant's "receipt" of such a "motion, order or other paper." 28 U.S.C. § 1446(b)(3).

Despite our broad interpretation of the "motion, order or other paper" requirement, the statutory language plainly does not encompass a document produced by a counterclaim defendant that is never "received" by that party. Nor does the phrase "motion, order or other paper" include a written acknowledgement that a counterclaim defendant receives in response to the submission of its own document to another entity, such as the DOD's acknowledgement of Northrop Grumman's CDA claim. A contrary holding would allow a counterclaim defendant to control the deadline for removal,

9

irrespective of the date on which the counterclaim defendant actually received notice of its federal defense.

Northrop Grumman's federal ripeness defense rested on its contention that the government's interpretation of the labor categories through the CDA process conclusively would resolve DynCorp's counterclaims. However, the subcontract itself, which Northrop Grumman first executed in October 2007, stipulated that the CDA process would govern disputes over the interpretation of certain terms in the subcontract, including the type at issue here. Thus, when the disagreement between the parties regarding DynCorp's labor mapping arose in 2014, Northrop Grumman was on notice that the CDA process was available to resolve the dispute.

At the time DynCorp's counterclaims were filed in September 2015, and certainly when the amended counterclaims were filed two months later, Northrop Grumman was aware that the issue of DynCorp's labor mapping would be central to the litigation. These pleadings also placed Northrop Grumman on notice that it could raise a ripeness defense after initiating a CDA claim. We therefore conclude that, at the latest, Northrop Grumman's receipt of the amended counterclaims in November 2015 triggered the 30-day removal period.[5]

---

[5] We disagree with Northrop Grumman's argument that the basis for removal became "unequivocally clear and certain" only when the CDA claim was filed, and that a different holding would encourage "protective removals" based on an "equivocal record." *See Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211-12 (5th Cir. 2002). As explained above, the availability of the CDA process to resolve counterclaims implicating DynCorp's labor mapping practices was ascertainable well before the CDA claim was filed.

Northrop Grumman did not act within this 30-day period to remove the case to federal court, but waited six months after receiving the amended counterclaims to file its notice of removal when it appeared that the case soon would proceed to trial.[6] The removal rules do not permit such "strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position." *Lovern*, 121 F.3d at 163. Allowing manipulation of the removal process in this manner would undermine the purpose of the 30-day deadline, namely, to "prevent[] undue delay in removal and the concomitant waste of state judicial resources." *Id.*

We further observe that Northrop Grumman's position has no logical limit. Under Northrop Grumman's view, a defendant could proceed through the close of discovery, unsuccessfully seek summary judgment, and only then file a CDA claim to trigger a federal defense and the 30-day removal period. Indeed, under Northrop Grumman's position, nothing would prevent a defendant from filing a notice of removal on the morning of trial. We will not endorse a position subject to such strategic abuses. Accordingly, we conclude that Northrop Grumman's notice of removal did not comply with the 30-day deadline imposed by Section 1446(b)(3).[7]

---

[6] We also observe that Northrop Grumman filed its notice of removal the night before a scheduled hearing in state court regarding DynCorp's motion for discovery sanctions.

[7] We are not persuaded by Northrop Grumman's attempt to shift blame for its delay in removal to DynCorp, by arguing that Northrop Grumman was waiting to receive certain documentation from DynCorp before filing the CDA claim. Northrop Grumman essentially asserts that it was not required to file a notice of removal on DynCorp's counterclaims until its own case, seeking documentation from DynCorp, was complete in (Continued)

11

By actively engaging in defensive litigation in the state court for seven months before filing its removal notice, Northrop Grumman's conduct further showed a "clear and unequivocal intent to remain in state court" until that forum no longer served its purposes. *Grubb*, 935 F.2d at 59 (internal quotation marks omitted). As noted above, in addition to filing a demurrer to DynCorp's counterclaims that largely was overruled, Northrop Grumman engaged in extensive discovery by serving and responding to multiple sets of interrogatories, requesting and producing documents, filing motions to compel against DynCorp, and deposing numerous witnesses. Northrop Grumman also filed a motion for summary judgment on DynCorp's unjust enrichment counterclaim and requested a jury trial before filing its notice of removal.

Northrop Grumman thus sought multiple, substantive rulings from the state court on DynCorp's counterclaims before filing the notice of removal. *See Estate of Krasnow v. Texaco, Inc.*, 773 F. Supp. 806, 809 (E.D. Va. 1991) ("[A] defendant must not be allowed to test the waters in state court [by filing a demurrer] and, finding the temperature not to its liking, beat a swift retreat to federal court. Such behavior falls within the very definition of forum-shopping and is antithetical to federal-state court comity."). Under these circumstances, considerations of judicial economy, fairness, and comity strongly support a conclusion that Northrop Grumman repeatedly sought to use

state court. This theory runs counter to the requirement that defendants promptly file a notice of removal. Moreover, counsel conceded at oral argument that Northrop Grumman did not submit with the CDA claim any documents obtained from DynCorp, and that the government only recently has requested such supporting documentation.

the state court proceedings to its advantage, and thereby waived its right to removal. *See Grubb*, 935 F.2d at 59.

Both the 30-day removal deadline and the waiver doctrine require that a party defending claims filed against it make a timely choice, either to defend the case in state court or to remove promptly to a federal forum. Because Northrop Grumman chose to defend the case in the state court far beyond the 30-day removal deadline, Northrop Grumman's request for removal was both untimely and waived by its litigation conduct in the state court.

### III.

For these reasons, we conclude that the district court did not err in granting DynCorp's motion to remand the case to the state court. Accordingly, we affirm the district court's judgment.

*AFFIRMED*