**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONNIE DIETRICH, an individual,
*Plaintiff-Appellee*,

v.

THE BOEING COMPANY, improperly denominated as The Boeing Company, individually and as successor by merger to McDonnell Douglas Corporation, successor by merger with Douglas Aircraft Company,
*Defendant-Appellant*,

and

AUTOZONE WEST, INC., AKA Autozone, Inc., individually and as successor in interest to Chief Auto Parts, Inc.; BORGWARNER MORSE TEC LLC, as successor by merger to Borg-Warner Corporation; HONEYWELL INTERNATIONAL, INC., individually and as successor in interest to Allied Signal, Inc., individually and as successor in interest to Bendix Corporation; KELLY-MOORE PAINT COMPANY INC; MASONEILAN INTERNATIONAL, INC.,

No. 19-56409

D.C. No.
2:19-cv-04291-
JAK-PJW

OPINION

individually and as successor in interest to Mason-Neilan Regulator Company and Annin Valve Co.; METALCLAD INSULATION LLC, FKA Metalclad Insulation Corporation; OWENS-ILLINOIS, INC., individually and as successor in interest to Owens-Illinois Glass Company; SOCO WEST, INC., Brenntag West, Inc. f/k/a SOCO-Lynch Corporation successor in interest to Western Chemical and Manufacturing, Co.; THE PEP BOYS - MANNY, MOE AND JACK OF CALIFORNIA; UNION CARBIDE CORPORATION; WESTERN AUTO SUPPLY COMPANY; DOES, 1 through 400, inclusive,

*Defendants.*

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted January 13, 2021
Submission Vacated January 14, 2021
Resubmitted September 24, 2021
Pasadena, California

Filed October 1, 2021

Before:  Michelle T. Friedland and Mark J. Bennett, Circuit
       Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Bennett

---

### SUMMARY[**]

### Removal to Federal Court

The panel reversed the district court's order remanding a removed action to state court, vacated the district court's award of attorneys' fees to the plaintiff under 28 U.S.C. § 1447(c), and remanded.

Connie Dietrich sued The Boeing Co. and other defendants in state court in October 2018, alleging causes of action based on her exposure to asbestos that her family members brought home from work.  Her complaint did not allege that her family members were exposed to asbestos through Boeing's work for the United States military. Dietrich's responses to Boeing's first set of interrogatories, served on November 8, 2018, reaffirmed the seemingly "civilian" nature of her claims against Boeing.  Dietrich produced her husband's military records on November 30, 2018.  On April 19, 2019, she served amended discovery responses, stating that she was exposed to asbestos through her husband's exposure to asbestos-containing components

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

of Boeing's aircraft during his time in the Marine Corps. Boeing removed the action to federal court 27 days later, on May 16, 2019, under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The district court granted Dietrich's motion to remand on the ground that the removal was untimely under 28 U.S.C. § 1446(b).

The panel held that it had jurisdiction over the remand order under 28 U.S.C. § 1447(d), which creates an exception to the general rule denying appellate review of remand orders for "an order remanding a case to the state court from which it was removed pursuant to [28 U.S.C. § 1442 or 1443]." The panel held that, even though the district court remanded pursuant to § 1446(b), under *BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021), the panel had jurisdiction to review the remand order because the case was removed under § 1442.

The panel held that § 1446(b) sets a 30-day deadline to remove a case to federal court. Under the first pathway to removal, the basis for removal is clear from the complaint, and the 30 days begin to run from the date the defendant receives the initial pleading. Under the second pathway to removal, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Agreeing with other circuits, the panel held that the second pathway's removal clock does not start until a paper makes a ground for removal "unequivocally clear and certain." The panel held that "other paper" in § 1446(b)(3) does not include oral testimony. The panel concluded that Boeing's removal was timely, as no ground for removal was

unequivocally clear and certain until service of Dietrich's amended discovery requests.

**COUNSEL**

Eric B. Wolff (argued), Chief Counsel, Perkins Coie LLP, Seattle, Washington; Brent M. Karren and Timothy D. Swain, Manning Gross & Massenburg LLP, Los Angeles, California; for Defendant-Appellant.

Tyler Stock (argued) and Benno Ashrafi, Weitz & Luxenburg P.C., Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

BENNETT, Circuit Judge:

28 U.S.C. § 1446(b) sets a thirty-day deadline to remove a case to federal court. Often, the basis for removal is clear from the complaint (or other initial pleading), and so the thirty days begin to run from the date a defendant receives the initial pleading. 28 U.S.C. § 1446(b)(1). This is the first pathway to removal. But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). This is the second pathway to removal.

In *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689 (9th Cir. 2005), we established some guiding principles for

determining whether the case stated by the initial pleading is removable.  We also established some guiding principles for determining whether "an amended pleading, motion, order or other paper" starts the clock for the second pathway.  Those principles include "bring[ing] certainty and predictability to the process" of removals; "avoid[ing] gamesmanship in pleading"; and "avoid[ing] the spect[er] of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry."  *Id.* at 697.  We held that these principles are best "served by a bright-line approach," *id.*, but we did not define what such a "bright-line" approach should look like, other than requiring that a ground for removal be "revealed affirmatively" in the relevant paper, *id.* at 695.  We left district courts to determine case by case whether the initial pleading "set[s] forth" a ground for removal, or whether a ground for removal is "ascertain[able]" from a subsequent paper.  28 U.S.C. § 1446(b)(1), (3).

    This case demonstrates why more guidance from our court is needed.  The timeliness of the removal by Defendant-Appellant The Boeing Company ("Boeing") under the second pathway has confounded the parties, the district court, and our court.  As a result, the parties have been embroiled in collateral litigation for nineteen months, in a case in which time is distinctly of the essence.  Thus, to help avoid similar collateral litigation in the future, and to reinforce the principles we announced in *Harris*, we now adopt a more explicit standard for the second pathway.  That pathway's removal clock does not start until a paper makes a ground for removal "unequivocally clear and certain."

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff-Appellee Connie Dietrich was diagnosed with malignant pleural mesothelioma in July 2018.  She sued several defendants in October 2018, alleging that her father and husband worked with asbestos-containing products manufactured and/or supplied by the defendants, resulting in her own exposure to asbestos when she washed their clothes, rode in their cars, or cleaned the house.

Dietrich's complaint against Boeing did not allege that her family members were exposed to asbestos through Boeing's work for the United States military, a connection that would have alerted Boeing to a possible basis for removal to federal court under the federal officer removal statute, 28 U.S.C. § 1442.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (discussing requirements for military contractors to invoke the federal officer removal statute).  Boeing was one of twelve named defendants, yet Dietrich expressly excepted Boeing from her strict liability claim, which was premised on the other defendants having *sold* asbestos-containing products that harmed those like Dietrich, her father, and her husband.  This suggested that Dietrich was not suing Boeing for having sold asbestos-containing products to a third-party like the military, but that Dietrich's claims against Boeing were premised only on her husband's exposure to asbestos as an employee of Boeing.  Dietrich's complaint did not otherwise suggest that her claims against Boeing—or any of the defendants, for that matter—arose from her father's or husband's work on military aircraft.  And Dietrich's preliminary fact sheet limited her "locations of exposure" to Lakewood, California and Long Beach, California, where Douglas Aircraft Company ("Douglas"), a Boeing predecessor, operated a facility producing commercial

aircraft, rather than Hawaii, where her husband was stationed during most of his military service.

On November 8, 2018, Dietrich served her responses to Boeing's first set of interrogatories, which reaffirmed the seemingly "civilian" nature of her claims against Boeing. She stated: "From 1948 to 1957, Mr. Dietrich worked as an aircraft mechanic in the United States Marine Corps . . . . *After* he left the service, Mr. Dietrich performed the same type of work for Douglas Aircraft in Long Beach, CA." (Emphasis added). Then, on November 30, 2018, Dietrich produced her husband's military records, not as a strategic move to build her case against Boeing, but in compliance with the Case Management Standing Order of the Los Angeles Superior Court. In other words, the production of those records did not speak to the nature or scope of Dietrich's actual claims against Boeing. Indeed, although the records showed that Dietrich's husband was stationed in California at the tail end of his military service, Dietrich later testified in her deposition in December 2018 that her husband had never told her whether he worked on asbestos-containing aircraft while stationed there.

On April 19, 2019, Dietrich served amended responses to Boeing's discovery requests, stating clearly for the first time that "CONNIE DIETRICH was exposed to asbestos . . . through her now deceased husband's exposure to asbestos-containing components of BOEING'S aircraft . . . during Mr. DIETRICH'S time *in the United States Marine [Corps]*." (Emphasis added). Boeing removed twenty-seven days later on May 16, 2019, under the federal officer removal statute. 28 U.S.C. § 1442(a)(1).

The district court granted Dietrich's motion to remand, concluding that the removal was untimely under our decision in *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th

Cir. 2006).  We stated in *Durham* that "a federal officer defendant's thirty days to remove commence when the plaintiff discloses sufficient facts for federal officer removal." *Id.* at 1253.  From that statement, the district court determined that our court had adopted a "sufficient facts" standard for starting the removal clock under § 1446(b)(3)—the second removal pathway.  The district court believed we had held the relevant question to be when the defendant had sufficient information to be *able* to remove.  Thus, because the district court found "[a]mple facts sufficient to give Boeing grounds to remove this action . . . by late 2018, and certainly prior to April 16, 2019," the court concluded that "the removal on May 16, 2019 was untimely."  It also awarded Dietrich $3,500 in attorneys' fees under 28 U.S.C. § 1447(c), concluding that Boeing's removal was not "objectively reasonable." *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

## II.  JURISDICTION

We have jurisdiction over the remand order under 28 U.S.C. § 1447(d), which creates an exception to the general rule denying appellate review of remand orders for "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title."[1]

---

[1] 28 U.S.C. § 1447(d) provides in full: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."

Boeing removed under § 1442(a)(1), the federal officer removal statute, so the exception applies.

Previously, we had held that our court could review an order remanding a case removed under §§ 1442 or 1443 only if the case was *remanded* pursuant to one of those two provisions. *See County of San Mateo v. Chevron Corp.*, 960 F.3d 586, 598 (9th Cir. 2020). Boeing removed pursuant to § 1442(a)(1), but the district court remanded pursuant to § 1446(b), so we would have lacked jurisdiction to review the propriety of the remand order under our precedent. But the Supreme Court recently abrogated our removal jurisdiction rule in *BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021). The Court confirmed that courts of appeals have jurisdiction to review a remand order in its entirety so long as the case was *removed* under §§ 1442 or 1443. *Id.* at 1537–38. Thus, we proceed to the merits of Boeing's appeal.

## III.  STANDARD OF REVIEW

We review remand orders de novo, *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013), and their accompanying awards of attorneys' fees for an abuse of discretion, "overturn[ing] the district court's decision only if it is based on clearly erroneous findings of fact or erroneous determinations of law," *Dahl v. Rosenfeld*, 316 F.3d 1074, 1077 (9th Cir. 2003).

## IV.  DISCUSSION

As discussed above, § 1446(b) lays out two pathways for removal. Dietrich's initial complaint does not set forth a ground for removal, so the first pathway does not apply. Thus, the question we must answer on appeal is at what point the removal clock began under the second pathway. That is,

at what point could the federal officer ground for removal *first be ascertained* from an amended pleading, motion, order, or other paper?

To answer that question, we turn first to the text of the statute. *Hawaii v. Off. of Hawaiian Affs.*, 556 U.S. 163, 173 (2009). While § 1446(b)(1) requires only a pleading that "set[s] forth" a ground for removal to start the removal clock under the first pathway, § 1446(b)(3)'s second pathway requires an amended pleading, motion, order, or other paper from which a ground for removal may be "ascertained." "Set forth" means only to "give an account or statement of." *Set forth*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/set. "Ascertain" means "to find out or learn *with certainty*." *Ascertain*, *Merriam-Webster* (emphasis added), https://www.merriam-webster.com/dictionary/ascertain. "The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated *unequivocally*." *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002) (emphasis added).

The Fifth and Tenth Circuits have adopted the "unequivocally clear and certain" standard. *See id.*; *Paros Props. LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1269 (10th Cir. 2016); *see also Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 187 n.5 (4th Cir. 2017) (seeming to accept *Bosky*'s "unequivocally clear and certain" standard as the appropriate standard for removals under § 1446(b)(3)). This test has also been applied by many other circuits in all but name. *See Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 75 (1st Cir. 2014) (requiring "a clear statement of the damages sought or . . . [a] paper set[ting] forth sufficient facts from which the amount in controversy can easily be ascertained by the defendant by

simple calculation" for removal based on diversity jurisdiction); *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010) (per curiam) (requiring "a paper that explicitly specifies the amount of monetary damages sought" for removal based on diversity jurisdiction); *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (requiring "solid and unambiguous information that the case is removable," which "is akin to actual notice"); *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 825 (7th Cir. 2013) (requiring "specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable").  We believe the "unequivocally clear and certain" test hews to the text of § 1446(b)(3).

We also believe the "unequivocally clear and certain" standard will solidify the "jurisdictional and procedural interests" we developed in *Harris* to guide our interpretation of removal statutes.  It will "bring[] certainty and predictability to the process" of removals by its very name, requiring a basis for removal to be unequivocally clear and *certain*.  *Harris*, 425 F.3d at 697.  It will "avoid[] gamesmanship in pleading," preventing plaintiffs from strategically starting the removal clock without the defendants' realization, while still allowing plaintiffs to start the clock and prevent strategic delays simply by making the basis for removal *unequivocally clear and certain*.  *Id.*  It will "avoid[] the spect[er] of inevitable collateral litigation over whether the [amended pleading, motion, order or other paper] contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry," by preventing cases exactly like the one we confront today, in which the parties are litigating what Boeing should have known and when it should have known it.  *Id.*  Finally, by "guard[ing] against premature and protective removals and minimiz[ing] the potential for a

cottage industry of removal litigation," the "unequivocally clear and certain" standard will "assur[e] that removal occurs once the jurisdictional facts supporting removal are evident," and thus will "ensure respect for the jurisdiction of state courts." *Id.* at 698.

Relying on *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006), Dietrich argues that the removal clock instead begins under the second pathway as soon as sufficient information is available to permit the defendant to remove to federal court. But that was not the holding of *Durham.* In *Durham*, we were not deciding whether the thirty-day clock had *begun* under the second pathway, much less what standard to apply were that the question. Instead, we were deciding whether the thirty-day clock had been *reset* by the defendant's discovery of another ground for removal under the federal officer removal statute, after having already discovered and allowed the thirty-day clock to expire on a different ground for removal. *Id.* at 1249. We held "that a federal officer defendant's thirty days to remove commence when the plaintiff discloses sufficient facts for federal officer removal, even if the officer was previously aware of a different basis for removal." *Id.* at 1253.

Viewed in context, then, the operative part of *Durham*'s holding was that the removal clock begins upon the revelation of a federal officer ground for removal "even if the officer was previously aware of a different basis for removal." *Id.* The language preceding that holding—"that a federal officer defendant's thirty days to remove commence when the plaintiff discloses sufficient facts for federal officer removal"—does not tell us *when* the facts disclosed by the plaintiff will be sufficient. *Id.* The district court equates facts sufficient to *allow* removal with facts sufficient to *require* removal within thirty days. But in *Roth*

*v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, we concluded that a defendant *may* remove before it *must* do so. *Id.* at 1123.   Thus, especially when read alongside *Roth*, *Durham* does not answer *how* we determine when "*it may first be ascertained*" from an "amended pleading, motion, order or other paper . . . that the case is one which is or has become removable."   28 U.S.C. § 1446(b)(3) (emphasis added).

Applying the "unequivocally clear and certain" standard, an amended pleading, motion, order, or other paper must make a ground for removal unequivocally clear and certain before the removal clock begins under the second pathway of § 1446(b)(3).  Here, Boeing's removal was timely, as no ground for removal was unequivocally clear and certain until after April 16, 2019.**[2]**   Dietrich served her amended responses to Boeing's discovery requests on April 19, 2019. Those responses *clearly* stated: "CONNIE DIETRICH was exposed to asbestos fibers, particles and/or dust through her now deceased husband's exposure to asbestos-containing components of BOEING'S aircraft . . . during Mr. DIETRICH'S time in the United States Marine [Corps]."   Before April 19, 2019, all the information available to Boeing was ambiguous or misleading as to whether Dietrich's claims against Boeing were related to her husband's service in the military.  This information included Dietrich's decision to expressly exempt Boeing from Dietrich's strict liability cause of action; the geographical limitation on Dietrich's locations of exposure; Dietrich's response to Boeing's first set of interrogatories that her

---

**[2]** April 16, 2019, is the relevant date because Boeing removed thirty days later, on May 16, 2019.  Thus, unless a pleading, motion, order, or "other paper" started the removal clock before April 16, 2019, Boeing's removal was timely under § 1446(b).

husband started working on Douglas aircraft *after* his military service had ended; and Dietrich's statement during her deposition that her husband had never told her specifically whether he had worked on asbestos-containing aircraft while briefly stationed in California.

The district court's determination that Boeing had "ample" information to remove "certainly prior to April 16, 2019" relied in part on Dietrich's children's depositions, which were *taken* on April 8–10, 2019. However, as the Fifth Circuit explained in *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602 (5th Cir. 2018), "[t]he plain meaning of, purpose of, and policy considerations behind § 1446(b) all support the conclusion that oral testimony at a deposition does not constitute [an] 'other paper.'" *Id.* at 608; *see also id.* at 610 n.26. The plain meaning of "other paper" does not cover oral testimony, and we so hold here, because "'paper' is defined as '[a] written or printed document or instrument.'" *Id.* at 608 (first alteration omitted) (quoting *Paper*, Black's Law Dictionary 1266 (4th ed. 1951)).[3] Thus, even if Dietrich's children's depositions did affirmatively reveal a federal officer ground for removal, Boeing's removal was timely unless it received the deposition *transcripts* on or before April 15, 2019. Clearly Boeing did not, because the court reporter did not even certify the transcripts until April 17, 2019, and April 23, 2019.

---

[3] The Tenth Circuit has held that "the removal period commences with the giving of the [deposition] testimony, not the receipt of the transcript." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999). We reject that interpretation as plainly inconsistent with § 1446(b)(3)'s requirement of "a pleading, motion, order or other *paper*." (Emphasis added).

We adhere to *Harris*'s principles of certainty, fairness, efficient dispute resolution, and federalism by adopting the "unequivocally clear and certain" standard.  We hope that this standard will increase certainty, promote fairness, and materially reduce the types of delays that occurred in this case, delays that conflict with one of the basic principles of our legal system—justice delayed is justice denied.

Finally, given the time sensitive nature of this dispute, we urge the district court to resolve this case as swiftly as possible on remand.

**REVERSED,** and the award of attorneys' fees is **VACATED,** with the parties to bear their own costs on appeal.